UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICENTE GARCIA,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent | No. 16 CV 859<br>(08 CR 746-2)<br><br>Hon. Charles Norgle |

**GOVERNMENT'S RESPONSE TO PETITIONER VICENTE GARCIA's SECTION 2255 MOTION**

The UNITED STATES OF AMERICA, by its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, hereby responds in opposition to the Motion to Vacate, Set Aside, or Correct Sentence ("Petition") filed by Vicente Garcia ("Petitioner") pursuant to 28 U.S.C. § 2255. (*See* Dkt. 1, 5.)[1] The government respectfully requests that the Court deny the Petition for the following reasons.

## I. BACKGROUND

### A. Petitioner's Conviction

Petitioner was charged as part of an extensive multi-defendant criminal prosecution arising out of the operations of the Latin Kings street gang in Chicago from 2000 to 2008. *See United States v. Garcia*, 754 F.3d 460, 465 (7th Cir. 2014). Specifically, Petitioner was charged, by superseding indictment, with: participating

[1] On May 9, 2016, Petitioner, *pro se*, filed an "Affidavit of Facts." (*See* Dkt. 12.) Therein, Petitioner requested, "to amend the following claims to the pending Section 28 USC 2255 Motion," but in essence raised four additional claims. (*Id.* at 1-3.) As noted below, three of the four claims should be dismissed as untimely.

in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d); conspiring to commit extortion in violation of 18 U.S.C. § 1951; committing assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3); using and carrying a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c); conspiring to distribute cocaine in violation of 21 U.S.C. § 846; and possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), in connection with his roles as Regional Inca and Supreme Regional Inca of the Latin Kings in the Little Village neighborhood in Chicago. (*See* Superseding Indictment, R. 299.)[2] As a Supreme Regional Inca, Petitioner "oversaw operations in all regions within his designated geographic area, implemented gang rules, ensured punishment when the rules were violated, and ordered retaliatory strikes against rival gangs." *Garcia*, 754 F.3d at 465. Similarly, as Regional Inca, Petitioner managed the gang's operations in smaller territories. *Id.*

On April 6, 2011, a jury found Petitioner guilty on all counts. (*See* R. 840)

**B. Trial Counsel**

On May 2, 2011, Petitioner's trial counsel filed a motion to withdraw as counsel, noting that he was "the fourth attorney in this case and the third Panel attorney appointed to represent the Defendant." (*See* R. 877.) On May 13, 2011, the Court denied Petitioner's trial counsel's motion. (*See* R. 891.) Petitioner subsequently retained new counsel and on May 31, 2011, Petitioner's new counsel

[2] References to docket entries in the underlying criminal case against Petitioner (08 CR 746-2) are designated herein as "R," followed by the docket entry number.

filed his notice of appearance. (*See* R. 899.) On July 6, 2011, Petitioner's initial trial counsel was permitted to withdraw from the case. (*See* R. 923, 940.)

### C. Petitioner's Sentence

On October 24, 2011, the U.S. Probation Office prepared its Pre-Sentence Investigation Report ("PSR") in advance of Petitioner's sentencing hearing. The PSR calculated Petitioner's total offense level as 43, Petitioner's criminal history category as a level III (consisting of a total of four criminal history points), and a guidelines range of life imprisonment.

On November 12, 2012, Petitioner's counsel filed his Objections to the PSR and Sentencing Memorandum in Support of Variance ("Petitioner's Sentencing Memo"). (*See* R. 1263.)

On January 31, 2013, the government filed its Position Paper on Sentencing. (*See* R. 1293.) In its position paper, the government requested a sentence of 60 years' imprisonment. (*Id.*)

On February 8, 2013, the Court conducted Petitioner's sentencing hearing. (*See* R. 1296.) The Court sentenced Petitioner to: 240 months' imprisonment on Counts One, Two, Nine, Ten, and Fourteen; 60 months' imprisonment on Counts Eleven and Thirteen; and 360 months' imprisonment on Count Twelve, all to run concurrently. (*See* R. 1299.) The Court also sentenced Petitioner to 120 months' imprisonment on Count Three, to run consecutively to the remaining counts. (*Id.*)

### D. Petitioner's Appeal

On February 20, 2013, Petitioner filed a timely notice of appeal challenging his conviction and sentence. (*See* R. 1300.) Petitioner's appeal was consolidated

with eight of his co-defendants (Luis Garcia, Felipe Zamora, Fernando King, Samuel Gutierrez, Javier Ramirez, Jose Guzman, Augustin Zambrano, and Alfonso Chavez). *See Garcia*, 754 F.3d at 460. On August 15, 2013, Petitioner, through counsel,[3] filed his appellate brief. (*See* App. R. 14.)[4]

On appeal, Petitioner argued that: (1) the Court erred by providing an incorrect *Pinkerton* instruction; (2) Count Three was a lesser included offense of Count Two and violated the double jeopardy clause; (3) Count Three should alternatively be remanded for resentencing in light of *United States v. Alleyne*, 133 S. Ct. 2151 (2013); (4) there was insufficient evidence to sustain the VICAR count charged in Count Nine; (5) there was insufficient evidence to sustain the conspiracy to commit extortion charged in Count Ten; (6) the Court erred by denying a mistrial after the jury saw the defendants enter the courtroom escorted by U.S. Marshals; (7) Petitioner's Fifth and Sixth Amendment rights were violated because the Court conducted improper fact-finding at sentencing; and (8) the Court erred when it sentenced Petitioner based upon facts established by a preponderance of evidence. (*Id.*)

On June 13, 2014, the Seventh Circuit, as part of a lengthy opinion, affirmed Petitioner's conviction and sentence. *See Garcia*, 754 F.3d at 474-76.

On November 15, 2014, Petitioner filed a petition for writ of certiorari before the U.S. Supreme Court. (*See* App. R. 84.) On January 12, 2015, the U.S. Supreme

[3] Petitioner's appellate counsel, who was appointed *pro bono*, did not represent Petitioner before the district court.

[4] References to the record in Petitioner's appeal in Case No. 13-1370 are cited as "App. R.," followed by the docket entry.

Court denied Petitioner's petition for writ of certiorari. (*See* App. R. 88.) On October 5, 2015, the Supreme Court denied Petitioner's petition for rehearing. (*See* App. R. 90.)

## II. PETITIONER'S SECTION 2255 MOTION

On January 11, 2016, Petitioner, *pro se*, timely filed his Petition.[5] The Petition raises approximately nineteen claims, alleging that the Court lacked subject matter jurisdiction and that either trial counsel or appellate counsel (or in some cases both) provided ineffective assistance of counsel. On May 9, 2016, Petitioner, *pro se*, filed an "Affidavit of Facts," which sought to add four additional claims. (*See* Dkt. 12.)

## III. ANALYSIS

The Court should deny Petitioner's Section 2255 motion. *First*, many of Petitioner's arguments have been waived because they are unsupported, conclusory, vague, and speculative. *Second*, many of Petitioner's claims are procedurally defaulted because he failed to raise them on direct appeal and/or are not cognizable under Section 2255. *Third*, several of Petitioner's claims are precluded as attempts to re-litigate issues previously decided as ineffective assistance of counsel claims. *Finally*, even on the merits, Petitioner's claims, including those of ineffective assistance of counsel, fail.

[5] The Petition is dated January 11, 2016. (*See* Dkt. 1.) Per the envelope received by the Clerk's Office, the Petition was postmarked January 13, 2016, and the Petition was received by the Clerk's Office on January 19, 2016. (*See* Dkt. 1-1; *Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999) ("a petition is deemed filed when given to the proper prison authorities and not when received by the district court clerk").)

### A. Legal Standard

#### 1. Waiver

Petitioner repeatedly asserts that his lawyers were ineffective, yet provides virtually no facts or law to support these conclusory allegations. Relief under § 2255 is "reserved for extraordinary situations" and requires that the petitioner "must show that the district court sentenced him in violation of the Constitution or laws of the United States . . . ." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Thus, to succeed on a claim of ineffective assistance of counsel, the defendant must identify and "make clear" to the court the specific acts or omissions forming the basis for his claims. *Arango-Alvarez v. United States*, 134 F.3d 888, 892 (7th Cir. 1998).

Despite this requirement, the Petition is generally devoid of fact and legal argument. As a result, the government is forced to guess at the meaning of his claims in order to respond to the Petition. Arguments (such as Petitioner's) that are conclusory, undeveloped, and unsupported are waived. *See United States v. Collins*, 604 F.3d 481, 488 n.2 (7th Cir. 2010); *United States v. Watson*, 189 F.3d 496, 500 (7th Cir. 1999); *United States v. Smallwood*,188 F.3d 905, 914 (7th Cir. 1999); *United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993).

#### 2. Ineffective Assistance of Counsel

To prevail upon his claims of ineffective assistance, Petitioner must demonstrate that his counsel made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court's analysis should

begin with the "strong presumption" that Petitioner's attorney rendered adequate representation of his client. *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000); *see also United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991) (it is necessary to "evaluate the conduct from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance") (internal citations and quotations omitted). Because counsel is presumed effective, "a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Hall*, 212 F.3d 1016, 1021 (7th Cir. 2000) (quotation omitted).

To establish ineffective assistance of counsel, Petitioner must prove that his attorney's performance fell below an objective standard of reasonableness and that the attorney's deficient performance prejudiced Petitioner such that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 686. Petitioner must establish both the "performance prong" and the "prejudice prong" in order to succeed. *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010); *see also United States v. Castro-Castellanos*, No. 10 CR 945, 2013 WL 4476080, *2 (N.D. Ill. Aug. 19, 2013) (if the Court finds that either prong of the *Strickland* test is not met, then there is no need to consider the other prong and the petition fails as a matter of law).

With regard to Petitioner's claims that appellate counsel provided ineffective assistance, to be entitled to a new appeal, Petitioner must demonstrate (a) that his

counsel's performance was insufficient—that he omitted a "'significant and obvious issue' without a legitimate strategic reason for doing so"—and (b) that the failure prejudiced Petitioner. *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000). To demonstrate prejudice, Petitioner "must show that if appellate counsel had raised the claim on direct appeal, there would have been a reasonable probability that it would have succeeded." *Bond v. United States*, 77 F.3d 1009, 1014 (7th Cir. 1996); *see also Howard*, 225 F.3d 790–91.

### B. Petitioner's Individual Claims

#### 1. Claim One: The Court Lacked Subject Matter Jurisdiction

Petitioner's first claim is that he "has the right to be released upon the grounds that the sentence was imposed in the complete absence of subject matter jurisdiction." (Dkt. 5 at 2.) Petitioner argues the Court lacked subject matter jurisdiction due to a lack of a "'case' or 'controversy.'" (*Id.*) Petitioner's argument is mistaken. Pursuant to 18 U.S.C. § 3231, "the district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States." Petitioner was charged with multiple violations of different provisions of Titles 18 and 21. As a result, Petitioner's claim should be denied.

#### 2. Claim Two: Trial Counsel Failed to Challenge the Particularity of the Indictment

Petitioner next claims that his trial counsel provided ineffective assistance of counsel by failing to challenge the indictment's particularity. (Dkt. 5 at 4.) Specifically, Petitioner claims that the indictment "fails to set forth the pattern of racketeering" and that this lack of notice "deprived [Petitioner] the ability to

investigate the charges against him and prepare a defense." (*Id.*) Petitioner further claims that Count Ten of the indictment, which charged Petitioner and others with conspiracy to commit extortion in violation of 18 U.S.C. § 1951, was deficient in that it failed to "allege an overt act" and failed "to state the names of individuals allegedly extorted." (*Id.*) Petitioner suggests that he "was denied the opportunity to defend against any overt act and to subpoena the alleged victims of extortion." (*Id.*)

*First*, as an initial matter, Petitioner's arguments have been procedurally defaulted because he failed to raise them on direct appeal. *See Dugan v. United States*, 18 F.3d 460, 464 (7th Cir. 1994) ("[A] federal prisoner's failure to raise a constitutional issue on direct appeal bars raising it in a subsequent § 2255 motion unless the defendant can show cause for and actual prejudice resulting from the error of which he complained.") (citing *United States v. Kovic*, 830 F.2d 680, 683 (7th Cir.1987)).

*Second*, it is worth noting that on October 27, 2010, Petitioner's co-defendant, Augustin Zambrano, filed a motion for a bill of particulars. (*See* R. 613.) Like Petitioner, the superseding indictment also charged Zambrano, *inter alia,* as part of the RICO conspiracy charged in Count One and as part of the conspiracy to commit extortion charged in Count Ten. On November 23, 2010, the Court denied Zambrano's motion. (*See* R. 659.) In its Order, the Court stated that "[i]n the present case, discovery has been substantial and includes numerous tape recordings." (*Id.*) The Court also noted that, "numerous co-defendants have entered pleas of guilty and their written plea agreements, which contain detailed factual

foundations, have been made available to defense counsel" and that "several defendants have also been sentenced." (*Id.*)

*Third*, Count One of the indictment sufficiently alleged a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Rule 7(c)(1) of the Federal Rules of Criminal Procedure provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "The test for whether a bill of particulars is necessary is 'whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial.'" *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir. 1981) (citing *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978) (emphasis added), *cert. denied*, 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165)). As the Seventh Circuit held in *United States v. Glecier*, "[n]either overt acts, nor specific predicate acts that the defendant agreed personally to commit, need be alleged or proved for a section 1962(d) offense." 923 F.2d 496, 500 (7th Cir. 1991) (internal citations omitted).

*Finally*, Count Ten of the indictment alleged that Petitioner, and other co-defendants, conspired to commit extortion "in that defendants demanded and received payments from an organization illegally selling fraudulent immigration documents in the Little Village area of Chicago by threatening and actually engaging in the use of force and violence against members of that organization." (R. 299 at 22.) The evidence presented at trial included evidence that the Latin Kings extorted a group known as the "miqueros" who sold fraudulent identification

documents "at several locations in the Latin Kings' 26th Street Region." *Garcia*, 754 F.3d at 467. The indictment's language provided adequate notice to enable Petitioner to prepare for trial. Additionally, the indictment need not have detailed the individual names of miqueros who were extorted. *See Roya*, 574 F.2d at 391 (holding that the indictment sufficiently alleged distribution of controlled substances despite its failure to state in each count the names and addresses of recipients). Petitioner's claim that the absence of named extortion victims in the indictment prevented him from calling extortion victims as witnesses at trial, is at best speculative. As a result, Petitioner's claim should be denied.

#### 3. Claim Three: Trial Counsel Failed to Move to Sever Counts Twelve and Thirteen

Petitioner's third claim is that trial counsel provided ineffective assistance of counsel by failing to file a motion for severance of Counts Twelve and Thirteen of the indictment on the basis that those charges occurred outside the time period of the drug conspiracy charged in Count Eleven. (Dkt. 5 at 5.) Count Eleven charged Petitioner, and eleven other co-defendants, with conspiracy to distribute and possess with intent to distribute a controlled substance, namely 500 grams or more of a mixture and substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1), between September 2007 and December 2007. (R. 299 at 23-25.) Specifically, Count Eleven alleged that "[Petitioner] caused each Section of the 26th Street Region to be supplied with 1/4 ounce quantities of cocaine approximately twice per month." (*Id.* at 24.) Count Twelve charged Petitioner with distribution of 50 grams or more of crack cocaine on June 19, 2007. (*Id.* at 26.) Count Thirteen charged

Petitioner with distribution of 5 grams of more of crack cocaine on July 19, 2007. (*Id.* at 27.) In essence, Petitioner argues that trial counsel was deficient for failing to move to sever Counts Twelve and Thirteen given that they fall outside of the same time period as the charged conspiracy and "[t]hese alleged sales are not part of the same series of acts or transactions." (Dkt. 5 at 5.)

Petitioner's argument is procedurally defaulted because it was not raised on direct appeal. Moreover, there is no cognizable claim. *See Hill v. United States*, 368 U.S. 424, 428 (1962). The claim should also be denied on the merits.

Rule 8(a) of the Federal Rules of Criminal Procedure provides, in part, that "the indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Moreover, "[i]n practice, severe prejudice is required for an order of severance [under Rule 14] and the trial judge's refusal to sever is rarely reversed." *Velasquez*, 772 F.2d 1348, 1352 (7th Cir. 1985) (citations omitted).

The cocaine distribution counts charged in Counts Twelve and Thirteen were of the same or similar character and were connected with or constitute parts of a common scheme or plan. Count Eleven charged Petitioner and other Latin King members with conspiracy to distribute cocaine and possess with intent to distribute cocaine. Counts Twelve and Thirteen charged Petitioner with selling crack cocaine. The offenses were of the same or similar character in that they both involved the distribution of cocaine. They also constituted parts of a common scheme or plan. As

noted on page 13 of Petitioner's PSR, Petitioner "obtained drugs for resale from a number of other Latin Kings, and distributed said drugs to other Latin King members for resale." The evidence presented at trial was that Petitioner sold crack cocaine to Milton Shanna, a cooperating witness and former Regional Inca within the gang, on both occasions. Thus, trial counsel did not perform deficiently by failing to move to sever Counts Twelve and Thirteen and Petitioner's claim should be denied.[6]

#### 4. Claim Four: Trial Counsel Erroneously Withdrew Petitioner's Motion to Suppress and Failed to Object to the Admission of Firearms From a Storage Locker

Petitioner's fourth claim is that trial counsel provided ineffective assistance of counsel by withdrawing a previously filed motion to suppress firearms and failing to object at trial to the admission of those firearms. (Dkt. 5 at 5-6.) Petitioner's argument is procedurally defaulted because it was not raised on direct appeal. Moreover, there is no cognizable claim. *See Stone v. Powell*, 428 U.S. 465, 494 (1976). The claim should also be denied on the merits.

On February 14, 2011, Petitioner's trial counsel filed a motion to suppress evidence, including firearms, found in a storage locker on the basis that counsel could not locate a search warrant or probable cause for the search of the storage locker in the discovery produced in the case. (R. 762.) On February 17, 2011, the government filed its response to Petitioner's motion to suppress. (R. 771.) On February 22, 2011, Petitioner's trial counsel withdrew the motion. (R. 774.)

---

[6] Petitioner was also sentenced concurrently on his convictions for Counts Eleven, Twelve, and Thirteen.

At trial, an employee of the storage facility testified that on December 18, 2006, he conducted a walk-through of the storage facility and noticed a unit that was considered vacant but that was locked with a storage lock. (Tr. at 1535.)[7] Pursuant to corporate policy, the employee entered the storage locker and observed several firearms and ammunition, after which he called police. (*Id.* at 1537-39.) The government also presented evidence that the lock's serial number belonged to Petitioner's wife's adjacent storage locker and that the lease for his wife's locker listed Petitioner as an authorized user. (*Id.* at 1539-41.) As discussed in the government's response brief (*see* R. 711) and consistent with the evidence presented at trial, there was no basis to suppress the storage locker evidence.

Furthermore, at trial, Petitioner's trial counsel objected to the admissibility of the storage locker evidence. (*See* Tr. at 1549 ("Mr. Baumgart has preserved his objection to the admissibility of these various items").) The court addressed trial counsel's objection and explained at length the relevance of the firearms and other found in the storage locker. (*Id.* at 1549-51 ("And so I have considered this material in terms of relevance under 401, and of course 402, and looked at it also in terms of Rule 403. So that, over objection, the evidence that was taken from the locker will be admitted").)

Post-trial, Petitioner retained new trial counsel who filed a Motion for a New Trial or a Judgment of Acquittal, where the issue was raised once again and Petitioner argued that the Court "erred when it allowed the government to

[7] References to trial transcripts are designated "Tr.," followed by the page number.

introduce directly against [Petitioner] the content of a storage locker" and argued that Petitioner "was in no way connected to the locker." (*See* R. 909 at 2; *see also* R. 1262 at 8-9.) As noted in the government's response brief, Petitioner made several incriminating admissions concerning the storage locker that were recorded during conversations with a cooperating witness. (*See* R. 967 at 22.) Where there was no basis for suppression of the storage locker evidence, and Petitioner's trial counsel in fact objected to the admissibility of the evidence at trial (and once again raised it in Petitioner's post-trial motion), Petitioner's claim is without merit and should be denied.

#### 5. Claim Five: Trial and Appellate Counsel Failed to "Properly Brief and/or Argue the Issue of Lay Testimony on Interpretation of Phone Conversations"

Petitioner's fifth claim is that both trial and appellate counsel provided ineffective assistance of counsel by failing to "properly brief and/or argue the issue of lay testimony on interpretation of phone conversations." (Dkt. 5 at 6-7.) Nevertheless, Petitioner does not cite to any particular testimony that he considered to be improper. Petitioner cites "Tr. Vol. 2 at 926 Guajardo Testimony, and Vol. 11 pg. 1267, Vol 12 Tr. 1779 Shanna Testimony,"[8] while stating that "trial

---

[8] The testimony Petitioner cites as "Tr. Vol. 2 at 926 Guajardo Testimony" relates to a meeting between Guajardo and Petitioner and a discussion of a funeral but does not appear to relate to any lay opinion testimony. (Tr. at 926.) The citation to page 1267 of the trial transcripts relates to the *re-cross examination* of Ernesto Grimaldo, a cooperating defendant, by defense counsel for co-defendant Augustin Zambrano regarding a post-arrest statement. (Tr. at 1267.) The citation to "Tr. 1779 Shanna Testimony" appears to relate to the caption page for testimony given on March 16, 2011.

counsel objected to lay testimony at trial." (*Id.* at 6.)[9] Petitioner also does not explain how counsel failed to "properly brief and/or argue" any issue. Furthermore, Rule 701 of the Federal Rules of Evidence permits opinion testimony by lay witnesses and states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Petitioner does not point to any witness testimony that was "scientific, technical, or other specialized knowledge within the scope of Rule 702." Moreover, as the Court found at trial, testimony from cooperating witnesses regarding their interpretations of recorded conversations was necessary to assist the jury in understanding the evidence presented. (Tr. at 1906.) Petitioner has not demonstrated how or what testimony was improper, nor how counsel were ineffective with regard to that testimony. Even if Petitioner's claim was cognizable (it is not) and was not procedurally defaulted (it is), Petitioner's conclusory and unsupported claim should be denied on the merits.

---

9 Petitioner cites to "Tr. Vol. 13 at pgs 1906-1907." (*See* Dkt. 5 at 6.) On page 1906, defense counsel for Augustin Zambrano (not Petitioner's defense counsel) objected to the government's method of playing a recording and then asking the testifying witness, Milton Shanna, to provide an interpretation of words used by the speaker. (Tr. at 1906.) The Court overruled the objection, stating in part, "the reason that I have permitted that most of the time—is that it does take some interpretation, some understanding by the witness as to the significance of words and the significance of references to individuals or an understanding of the gang operations" and "the jury would not be in a position to know this otherwise; that it takes a certain amount of personal knowledge and experience, which comes from this witness, and others."

#### 6. Claim Six: The Court Did Not Instruct the Jury Regarding Agreements with Informants or Buyer-Seller Relationship

Petitioner's sixth claim is that trial counsel provided ineffective assistance of counsel by failing to "argue and instruct the jury that neither an agreement with government informants nor a buyer seller relationship is a sufficient basis to convict defendant of conspiracy [and] cannot be attributed to trial strategy." (Dkt. 5 at 7-9.) As an initial matter, Petitioner's argument that the jury should have received a buyer-seller instruction has been procedurally defaulted because he failed to raise it on direct appeal. *See Dugan*, 18 F.3d at 464.

At trial, the government presented a substantial amount of evidence demonstrating a conspiracy to possess with intent to distribute and to distribute cocaine, as well as Petitioner's leadership of that conspiracy and its involvement of more than just government informants. (*See* Tr. 1811-12, 1826-27, 2854-61; 2876-78; *see also Garcia*, 754 F.3d at 480 ("But the evidence of conspiracy in the present case was strong; indeed, [Petitioner's co-defendant] Chavez admitted that a drug conspiracy existed.") The government's evidence showed a conspiracy between Petitioner and others in the Latin Kings, not just cooperating witnesses. As such, there was no factual basis for Petitioner's trial counsel to seek an instruction or argue a lack of a conspiracy based solely upon an agreement with government informants. Furthermore, whether a buyer-seller instruction is proper first requires consideration of "whether the defendant put forth a buyer-seller theory at trial." *See United States v. Johnson*, 437 F.3d 665, 676-77 (7th Cir. 2006). During his closing argument, Petitioner's trial counsel argued, *inter alia*, the credibility of

the government's witnesses (including Shanna), the meaning of recorded conversations, and the overall sufficiency of the evidence. (*See* Tr. 2933-42.) Petitioner's trial strategy did not involve a buyer-seller theory, which would have been grossly inconsistent with the evidence presented at trial. *See United States v. Fort*, 998 F.2d 542, 547-48 (7th Cir. 1993) (no error in not giving buyer-seller instruction "because such an instruction would have been inconsistent with [defendant's] defense.") Petitioner fails to rebut the strong presumption that trial counsel rendered adequate representation or demonstrate prejudice. Therefore, Petitioner's claim should be denied.

### 7. Claims Seven, Eight, and Ten: Conviction for Conspiracy to Commit Extortion (Count Ten)

Petitioner's seventh claim is that both trial and appellate counsel provided ineffective assistance of counsel by "failing to properly challenge the sufficiency of the evidence" in that "there is no proof that interstate commerce was affected in the alleged extortion of private individuals" and "there is no proof that the assets of the miqueros were depleted by the extorted cash payments." (Dkt. 5 at 9-10.) Petitioner argues that a "jurisdictional element" was missing from the government's proof and also states that counsel failed "to challenge [Petitioner's] actual innocence to a non-existing extortion offense." (*Id.*) Petitioner's related eighth claim is that, "trial counsel failed to note, object to, or argue the lack of corroborating evidence of the extortion count." (*Id.* at 10-11.) The Petition later raises (Petitioner's tenth claim) the argument that "trial counsel failed to instruct the jury on [a] corpus delecti rule regarding extortion charges," and states, "counsel was ineffective for

failing to instruct the jury that it could not find [Petitioner] guilty on the basis of Ruben Caquias uncorroborated['s] admissions." (Dkt. 5 at 12-13.)

As an initial matter, "a collateral attack cannot be used to obtain a second opinion on an argument presented and decided earlier." *United States v. Villegas*, 2014 WL 151539, at *3 (N.D. Ill. 2014) (citing *United States v. Flores*, 2014 WL 28642, *3 (7th Cir. Jan. 3, 2014); *White v. United States*, 371 F.3d 900, 902 (7th Cir.2004)); *see also United States v. Williams*, 2011 WL 2259757, at *1 (N.D. Ill. 2011) (denying the petitioner's motion for reconsideration of the denial of his habeas petition where the petitioner simply recast an argument already rejected on appeal as an ineffective assistance of counsel claim); *Wilson v. United States*, 2004 WL 2033064, at *2 (N.D. Ill. 2004) ("a petitioner may not use the § 2255 motion as a secondary appeal of issues decided earlier") (citing *Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992); *Daniels v. United States*, 26 F.3d 706, 711–712 (7th Cir.1994)). As detailed below, several of Petitioner's claims (including Petitioner's claims related to the sufficiency of his conviction for RICO conspiracy or conspiracy to commit extortion) are claims that were previously rejected on appeal and have now been recast as ineffective assistance of counsel claims.

The superseding indictment charged Petitioner with participating in a RICO conspiracy through a pattern of racketeering, including acts involving extortion. Count Ten of the indictment charged Petitioner with conspiracy to commit extortion, in violation of 18 U.S.C. § 1951. At trial, the government presented evidence that the Latin Kings extorted a group known as the "miqueros," who were

involved in selling fraudulent identification documents within the gang's territory. *See Garcia*, 754 F.3d at 467.

Contrary to Petitioner's claims, Petitioner's trial counsel argued during closing argument that "there is nothing to connect the miqueros and the extortion in this case with [Petitioner]." (Tr. at 2938.) Petitioner's subsequent trial counsel filed a Motion for Judgment of Acquittal or New Trial and a supplemental filing, in which counsel argued that "the government failed to prove that [Petitioner] committed extortion against the miqueros." (*See* Dkt. 909, 1262 at 1-4.) Petitioner's trial counsel further argued that "the government also failed to prove the jurisdictional element included in the drafting of the Hobbs Act in Count Ten." (Dkt. 1262 at 2.) As noted in the government's response to Petitioner's motion, witnesses testified regarding multiple threats and acts of violence against the miqueros. (*See* Dkt. 1266 at 3-5.) ICE Special Agent Nagy also testified at trial regarding the connections between the miqueros and interstate commerce. (*Id.* at 5-6.) After considering trial counsel's arguments, the Court denied Petitioner's motion for acquittal or a new trial. (Dkt. 1296.)

Appellate counsel also argued that there was insufficient evidence to convict Petitioner of conspiracy to commit extortion. (*See* App. R. 14 at 26.) The Seventh Circuit affirmed Petitioner's conviction, noting "[Petitioner] contends that the evidence of extortion was insufficient, but we explained in the section on Zambrano why there was enough in the record to support the jury's finding in this respect." *Garcia*, 754 F.3d at 476. Because both Petitioner's trial counsel and appellate

counsel argued the sufficiency of evidence supporting Petitioner's conviction for conspiracy to commit extortion (including trial counsel's challenge to the sufficiency of the jurisdictional element), Petitioner has failed to demonstrate how counsel performed deficiently. Finally, with regard to Petitioner's arguments concerning the "corpus delecti rule," the evidence presented at trial included the testimony of cooperating witnesses. Petitioner's conviction was not based solely upon an uncorroborated statement. Therefore, to the extent Petitioner's seventh, eighth, and tenth claims are not precluded, they should be denied on the merits.

#### 8. Claim Nine: Trial Counsel Failed to Correct False Testimony

Petitioner's ninth claim is that "[a]t trial confidential informant Caquias testified about extorting (The Miqueros) . . . "[t]rial counsel nor the prosecutor made no effort to correct such knowing false testimony." (Dkt. 5 at 11-12.) Nevertheless, Petitioner fails to identify how any trial testimony was false. Petitioner's vague, conclusory, and speculative claim has been procedurally defaulted and should be denied on the merits in any event.

#### 9. Claim Eleven: Trial Counsel Failed to Raise a Jurisdictional Challenge to Petitioner's VICAR convictions

Petitioner's eleventh claim is that "trial and appellate counsel were ineffective for failing to challenge the VICAR counts . . . on a jurisdictional basis" and states, "[t]he evidence shows that the activities of the alleged [e]nterprise did not have a substantial [e]ffect on interstate commerce. In fact there was only acts of violence." (Dkt. 5 at 13-14 (citing *United States v. Garcia*, 68 F. Supp. 2d 802

(E.D. Mich. 1999).) Petitioner's claim is procedurally defaulted where he failed to raise it on direct appeal.

The superseding indictment charged Petitioner with two counts of violent crime in aid of racketeering, specifically two counts of assault with a dangerous weapon, in violation of 18 U.S.C. § 1959(a)(3) (Counts Two and Nine). Several courts have held that only a *de minimis* effect on interstate or foreign commerce is required under 18 U.S.C. § 1959. *See e.g.*, *United States v. Crenshaw*, 359 F.3d 977, 983-87 (8th Cir. 2004); *Tse v. United States*, 290 F.3d 462, 465-66 (1st Cir. 2002); *United States v. Vasquez*, 267 F.3d 79, 86-89 (2d Cir. 2001); *United States v. Feliciano*, 223 F.3d 102, 117-19 (2d Cir. 2000). At trial, the government presented a substantial amount of evidence demonstrating the enterprise's effect on interstate commerce, including evidence of the gang's distribution of cocaine and crack cocaine, their extortion of the miqueros, and their purchase, possession, and use of firearms that traveled in interstate commerce. (*See* Tr. at 2404, 2406-07, 2784-87.) Petitioner's claim should be denied.

### 10. Claims Twelve and Thirteen: Trial Counsel Failed to Object to Improper Closing Argument

Petitioner's twelfth claim is that "the prosecutor made several misstatements of law in its closing argument." (Dkt. 5 at 14-15.) Petitioner argues that, during closing argument, the government "argues that the possession of [a] firearm is activities that affect interstate commerce" and "that the miqueros were engaged in interstate commerce the extortion affected commerce." (*Id.* at 14.) Petitioner's

claims are procedurally defaulted where he failed to raise them on direct appeal. Furthermore, they are mistaken.

During closing argument, the prosecutor stated:

> First, we have proven this to you in that the Latin Kings used and possessed firearms that were manufactured out of state. You have seen here 10 different firearms, nine of which belonged to this man, [Petitioner], and were part of his arsenal, guns that were available as the gang needed them.

(Tr. at 2785.) In other words, the government argued that the gang's *use* and possession of firearms that had traveled in interstate commerce was one of several ways that the evidence demonstrated the gang's racketeering activity's effects on interstate commerce. Regarding the miqueros, the prosecutor stated during closing argument:

> We have also proven [interstate commerce] to you a third way. You have heard over the course of the trial about the extortion of the Miqueros, the immigrants in the 26th Street Region who sold fraudulent identification documents. You have heard about the extortion of the Miqueros from the cooperators, individuals like Jesse Guajardo, Milton Shanna and Ruben Caquias, but also heard about it from Special Agent Dan Nagy from the Bureau of Immigration and Customs Enforcement. He told you about their investigation and how it focused on four different crews that were operating in the 26th Street Region. And he told you that most of the individuals that were operating, that were participating in this fraudulent identification document ring, came from a city outside of Mexico City. Which means these individuals crossed international and state lines in order to operate here in Chicago. You also know that their activities affected interstate commerce because they were selling identification documents, identification documents from states such as Michigan, Wisconsin, Indiana, Ohio, Texas, California. Finally, you heard that the software that was used to create these fraudulent identification documents, based on that investigation it was determined that the software came from Mexico. Again, across international lines, state lines. The activities of the Latin King street gang have affected interstate commerce. We have proven it to you through the Miqueros,

> the drugs, the guns, all of these things that are the life blood of the Latin King street gang, that they in their activities have affected interstate commerce.

(Tr. at 2786-87.) In order to establish liability for the RICO conspiracy, the government was only required to demonstrate a *de minimis* effect on interstate commerce. *United States v. Maloney*, 71 F.3d 645, 662-63 (7th Cir. 1995). As noted, there was abundant evidence that the activities of the miqueros, the object of the extortion conspiracy, affected interstate commerce. Thus, the government did not misstate the law.

Petitioner's thirteenth claim asserts that the government "improperly attacked defense counsel or the role of defense counsel with calling their defense the hey batta batta defense." (*Id.* at 15-16 (citing *United States v. Vaccaro*, 115 F.3d 1211, 1218 (5th Cir. 1997).) In *Vaccaro*, the prosecutor stated, "that's what defense lawyers do . . . They earn their living trying to muddle the issues. Trying to make it as fuzzy as possible. That's their job. I try to make it--," before defense counsel objected. 115 F.3d at 1218. The Fifth Circuit affirmed the conviction, stating, "where such an excessive statement comes in the heat of a closing argument in a hard-fought case, is objected to and immediately sustained, and subjected to an instant cautionary instruction to disregard it, it does not warrant reversal." *Id.*

Unlike in *Vaccaro*, the government's statements during closing argument in this case attacked Petitioner's defense and did not impugn defense counsel. During rebuttal closing argument, the government stated, "[b]ecause what you heard from [co-defendant Guzman's counsel] and what you heard from other counsel who just

argued over the last day was, as I like to call it, the Hey Batta Batta *defense*." (Tr. at 2992 (emphasis added).) The prosecutor's statements were made in the context of addressing an arguments made by defense counsel that shootings committed by the gang did not constitute racketeering activity, that cooperating witnesses lied, and that a co-defendant's tattoo of a lion could have been a reference to a professional sports team. (*Id.* at 2992, 2994, 3017, 3018, 3023, 3024 ("And so all of the arguments about this deal or that deal, it's more Hey Batta Batta. It's more trying to divert your focus from the evidence and the truth.").) Where a prosecutor's statements attack a defendant's defense, as opposed to defense counsel personally, such remarks are not improper. *See United States v. Xiong*, 262 F.3d 672, 675-76 (7th Cir. 2001) (holding that a prosecutor's statements regarding the credibility of defense argument and "the lameness of the defendant's case" were not improper). In context, the prosecutor's statements were not improper. Trial counsel's decision not to object to the prosecutor's statements did not constitute deficient performance given the deference afforded to counsel's strategy, especially in the context of the decision of whether to object or not during closing argument. Petitioner's claims should be denied.

**11. Claim Fourteen: Trial Counsel Failed to Object to the Introduction of the Latin King Manifesto**

Petitioner's fourteenth claim is that "trial counsel failed to object to admission into evidence [of] an alleged Latin King Manifesto." (Dkt. 5 at 16-17.) Specifically, Petitioner argues that the introduction of a Latin King manifesto document was prejudicial, constituted inadmissible hearsay, and violated the

Confrontation Clause. (*Id.*) Petitioner's claim is procedurally defaulted where he failed to raise it on direct appeal and is not cognizable.

At trial, the government introduced a Latin Kings manifesto that was found during the execution of a search warrant at co-defendant King's house, along with other gang literature, prayers, and documents. (Tr. at 786-93.) Witnesses testified regarding their familiarity with, and different aspects of, the gang's manifesto. (*See e.g.*, Tr. 878, 881-82, 914, 1154, 1174, 1299, 1620.) The gang manifesto was relevant to establish the existence of the racketeering enterprise and its probative value was not "substantially outweighed" by a danger of prejudice such that it should have been excluded under Rule 403 of the Rules of Evidence. The gang's manifesto was also non-hearsay to the extent it was not admitted for the truth of the matter asserted and was non-testimonial so there was no Confrontation Clause violation. Petitioner's claim should be denied.

**12. Claim Fifteen: Julio Leija Sanchez**

Petitioner's fifteenth claim is that "trial counsel failed to investigate and call" Julio Leija Sanchez. (Dkt. 5 at 17-19.) According to the Petition, "Julio Leija Sanchez, who was convicted as the lead defendant in the miqueros trial, and who was incarcerated at the time of movant's trial was available and willing to testify on behalf of [Petitioner's] defense. Had Mr. Mejia [sic] Sanchez been called as [a] witness at trial he would have testified that no such extortion existed." (*Id.* at 17-18.) In support, Petitioner attached a two-paragraph, unsigned, undated, uncaptioned, document titled "Affidavit of Julio Leija Sanchez." (*See* Dkt. 5 at 157.) The document simply states, "[t]hat I am the leading defendant in the miquero

fraudulent document case" and "[a]t no time during the investigation of my case did Special Agent Dan Nagy ever approach me and ask me if I or the miqueros were ever extorted by the Latin Kings nor did I ever have any knowledge that such extortion took place during the time frame of my conspiracy." (*Id.*) Petitioner's claim is procedurally defaulted where he failed to raise it on direct appeal.

*First*, the government was not required to call extortion victims in order to prove the existence of an extortion conspiracy. *Second*, trial counsel's decision *not* to call extortion victims at trial cannot be said to be deficient performance. Even if Petitioner's trial counsel did not investigate or interview potential extortion victims, such a decision would have been rational. *Third*, aside from the ambiguous two-paragraph, unsigned, undated, uncaptioned, document submitted by Petitioner, no evidence has been presented that suggests the existence of any witnesses that would have been favorable to Petitioner's defense. The document is ambiguous, self-serving, and lacks any indicia of reliability. Even assuming the truth and veracity of the document provided by Petitioner, it would fail to provide an adequate factual basis to support Petitioner's claim. As a result, Petitioner's claim should be denied.

#### 13. Claim Sixteen: ATF Testimony Concerning Interstate Commerce

Petitioner's sixteenth claim is that "trial counsel failed to object to expert testimony on interstate commerce." (Dkt. 5 at 19.) Petitioner asserts that "there was no reason to present this testimony [testimony by an ATF agent that firearms

used and possessed by defendants travelled in interstate commerce] and counsel was ineffective for failing to object to this form of expert testimony."

At trial, the government presented the testimony of ATF Supervisory Special Agent Michael Casey. (Tr. at 2395.) On direct examination, Agent Casey described his extensive background, education, and training concerning firearms and was qualified pursuant to Rule 702 of the Federal Rules of Evidence as an expert witness in the fields of firearm identification and firearm origin and manufacture. (*Id.* at 2395-2402.) Despite Petitioner's argument that, "there was no reason to present this testimony," the government was required to prove that the racketeering enterprise's activities affected interstate commerce. As such, Agent Casey's testimony concerning the interstate travel of firearms used and possessed in the case was relevant. Petitioner's claim is procedurally defaulted where he failed to raise it on direct appeal and should be denied on the merits in any event.

### 14. Claim Seventeen: Government Over-reaching and Manufactured Jurisdiction

Petitioner's seventeenth claim is that "trial counsel failed to move for dismissal of the indictment based on governmental over-reaching and manufactured jurisdiction." (Dkt. 5 at 19-21.) Petitioner's claim repeats prior arguments made concerning the sufficiency of evidence as to the RICO conspiracy and extortion conspiracy charges, as well as the evidence of an effect on interstate commerce, and without any evidentiary support states, "it is fair to say that [Petitioner] is a victim of [cooperating witness] Shanna's manufactured RICO scheme." (*Id.* at 20.) Petitioner's claim should be denied.

#### 15. Claim Eighteen: Trial and Appellate Counsel Failed to Challenge the Lack of Overt Act

Petitioner's eighteenth claim is that "there was no proof of an overt act committed in furtherance of the extortion conspiracy nor was there any overt act alleged. Therefore, there is insufficient evidence to convict [Petitioner]." (Dkt. 5 at 22.) Petitioner failed to argue that proof of an overt act was required on direct appeal, and therefore to the extent Petitioner raises that argument, it is procedurally defaulted. *See Dugan*, 18 F.3d at 464. With regard to the sufficiency of the evidence, as noted in the Seventh Circuit decision affirming Petitioner's conviction, "[Petitioner] contends that the evidence of extortion was insufficient, but we explained in the section on Zambrano why there was enough in the record to support the jury's finding in this respect." *Garcia*, 754 F.3d at 476. Petitioner's claim should be denied.

#### 16. Claim Nineteen: Trial Counsel Failed to Object at Sentencing to the Application of a Cross-Reference Under Guideline § 2A1.1

Petitioner's nineteenth claim is that he could not be held accountable for "murders and attempted murders attributable to the Latin Kings [because it] violates the presentment clause of the fifth amendment to the U.S. Constitution." (Dkt. 5 at 22-23.) Petitioner argues that trial counsel failed "to properly challenge the cross reference [under Guideline § 2A1.1] on the above stated jurisdictional grounds." (*Id.* at 23.)

In fact, Petitioner's trial counsel did object to the application of the guidelines based upon an argument that he could not be held responsible for murders and

attempted murders because those offenses "were neither charged nor presented to the jury." (Petitioner's Objections to the PSR and Sentencing Memorandum, R. 1263 at 12-13.) Petitioner's appellate counsel also raised the argument on appeal. (*See* App. R. 14 at 28-29.) Petitioner's argument was rejected both by this Court and the appellate court. As such, Petitioner's claim should be denied.

**C. Petitioner's May 9, 2016, Supplemental Claims**

On May 9, 2016, Petitioner, *pro se*, filed an "Affidavit of Facts." (*See* Dkt. 12.) Therein, Petitioner requested, "to amend the following claims to the pending Section 28 USC 2255 Motion," but in essence raised four additional claims. (*Id.* at 1-3.) Three of Petitioner's supplemental claims (supplemental claims A, B, and D) should be dismissed as time barred because they do not relate back to Petitioner's initial claims and are instead new claims.[10] *See Mayle v. Felix*, 545 U.S. 644, 662-64 (2005) (holding that AEDPA one-year statute of limitations bars the untimely addition of new claims or the amendment of claims that are not tied to a common core of operative facts). Petitioner's supplemental claim "C" is timely under 28 U.S.C. § 2255(f)(3) because Petitioner filed it within one year of "the date on which the right asserted was initially recognized by the Supreme Court" in *Johnson v. United States*, 135 S. Ct. 2551 (June 26, 2015). The merits of all four claims are addressed below.

---

[10] The model form used by Petitioner in his initial filing explicitly warned "CAUTION: If you fail to set forth all ground[s] in this motion, you may be barred from presenting additional grounds at a later date." (See Dkt. 1 at 3.)

#### 1. Supplemental Claim A: Trial Counsel Failed to Properly Object to the Government's Broadening of Superseding Indictment

Petitioner's supplemental "Claim A," makes the conclusory argument that trial counsel "failed to properly object to the government's broadening of the superseding indictment by adding a predicate RICO act namely assault with a dangerous weapon." (Dkt. 12 at 2.) Petitioner's argument is mistaken to the extent that Petitioner was charged with substantive VICAR violations for assault with a dangerous weapon under 18 U.S.C. § 1959, distinct from the RICO conspiracy charge. Petitioner's claim should be denied.

#### 2. Supplemental Claim B: Appellate Counsel Failed to Raise the Constructive Amendment of the Superseding Indictment and the Jury's Failure to Return a Constitutional Verdict

Petitioner's supplemental "Claim B," argues that appellate counsel "failed to raise the constructive amendment of the superseding indictment and the jury's failure to return a constitutional verdict on [Petitioner's] direct appeal" and "this omitted issue was clearly stronger than the issue raised by appellate counsel." (Dkt. 12 at 3.) Petitioner's claim is conclusory and fails to identify any "constructive amendment of the superseding indictment" or why the jury failed to "return a constitutional verdict." Petitioner's claim should be denied.

### D. Supplemental Claim C: Section 924(c) Conviction

Petitioner's supplemental "Claim C," argues that his conviction under 18 U.S.C. § 924(c)(1) has "been ruled unconstitutionally vague" based upon the U.S. Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (June 26,

2015). (Dkt. 12 at 3.) As an initial matter, Petitioner's argument has been procedurally defaulted because he failed to raise it on direct appeal. *See Dugan*, 18 F.3d at 464. Even if the argument was not procedurally defaulted, Petitioner's conviction is not impacted by *Johnson* where the underlying "crime of violence" satisfied the requirements of § 924(c)(3)'s "elements clause." Finally, even if § 924(c)(3)'s "residual clause" was implicated by *Johnson*, the statute is not unconstitutionally vague.

### 1. *Johnson v. United States* and Petitioner's Conviction

In *Johnson*, the U.S. Supreme Court held that the residual clause of the Armed Career Criminal Act of 1984 (ACCA)'s definition of "violent felony," 18 U.S.C. § 924(e)(2)(B)(ii), was void for vagueness. 135 S. Ct. 2551. Under Section 924(e)(1), a defendant with three or more prior convictions for a "violent felony" convicted of being a felon in possession of a firearm faces increased penalties. The statute defines the term "violent felony" to include any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court found ACCA's residual clause vague and therefore held that the imposition of an increased sentence "violates the Constitution's guarantee of due process." 135 S. Ct. at 2563.

Petitioner was convicted under a different statute, § 924(c)(1)(A), which prohibits, in part, "any person who, during an in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm." The term "crime of violence" is defined in similar, but not

identical, terms to Section 924(c)(3)(B). Specifically, § 924(c)(3) defines "crime of violence," in part, to mean

> . . . an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause is commonly referred to as the "elements clause," while the second clause is referred to as the "residual clause."

Count Three of the superseding indictment charged Petitioner with using and carrying a firearm during and in relation to a crime of violence, namely the VICAR violation charged in Count Two—which alleged that Petitioner and his co-defendants Ernesto Grimaldo and Nedal Issa "for the purpose of maintaining and increasing the defendants' position in, the Latin Kings, did knowingly and intentionally commit assault with a dangerous weapon upon an individual, that is, Victim A, in violation of the laws of the State of Illinois." (*See* Dkt. 299 at 14-15.) Assault with a dangerous weapon, in violation of Illinois law, was defined for the jury in this case as:

> . . . the offense of aggravated battery with a firearm in violation of 720 Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/12-4.2. Under Illinois law a person commits the offense of aggravated battery with a firearm when he, or one for whose conduct he is legally responsible, by means of discharging a firearm, knowingly and intentionally causes injury to another person.

(Tr. at 3052-53.)

As such, the "crime of violence" that formed the basis of Petitioner's § 924(c)(1)(A) conviction (assault with a dangerous weapon in aid of racketeering in

violation of 18 U.S.C. 1959(a)(3)) was "an offense that is a felony" and that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Knowingly and intentionally causing injury to another person by discharging a firearm includes as an element the use of physical force against a person. The evidence presented at trial as to the underlying crime of violence (the VICAR violation charged in Count Two), was based on the March 2, 2006, assault of Alphonso Torres. (*See* PSR at p. 19.) As noted in the PSR, both the shooter and the victim testified at trial. (*Id.*; *see also* Tr. at 1183-1214 (Grimaldo's testimony); Tr. at 1274-79 (Torres's testimony including testimony that Grimaldo shot him in the ribs). Petitioner's co-defendant, Nedal Issa, testified that Petitioner ordered him to have another gang member intentionally shoot a member of a rival gang, the Latin Counts. (Tr. at 1320-26; *see also* Tr. at 2841-42.) On Petitioner's order, a gang member intentionally shot a rival gang member in the ribs.

### 2. ***Johnson* Did Not Overrule Supreme Court Precedent Requiring a Party to Make an As-Applied Constitutional Challenge.**

Additionally, Petitioner's argument fails because he failed to raise a vagueness challenge as applied. Except in circumstances not applicable here, the Court is required to analyze any vagueness challenge to a statute in the context of how that statute is applied to the particular facts. *See Chapman v. United States*, 500 U.S. 453, 467 (1991); *United States v. Powell*, 423 U.S. 87, 92 (1975); *United States v. Mazurie*, 419 U.S. 544, 550 (1975); *United States v. Calimlim*, 538 F.3d 706, 710 (7th Cir. 2008). The Supreme Court in *Johnson* rejected the view that a provision cannot be facially vague merely because there is "some conduct that

clearly falls within the provision's grasp," 135 S. Ct. at 2561, but did not hold that the possibility of a vague application renders a statute void. Rather, the Supreme Court concluded that ACCA's residual clause was void because it was "a 'judicial morass that defies systemic solution,' 'a black hole of confusion and uncertainty' that frustrates any effort to impart 'some sense of order and direction.'" *Id.* at 2562 (citation omitted). Still, "there are [other] statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain." *Smith v. Goguen*, 415 U.S. 566, 577-578 (1974).

For those statutes, the general rule is that a vagueness challenge is not available to one who violates the "hard core" of the statute. *Smith*, 415 U.S. at 577-578 (hyphen omitted). Facial vagueness challenges should be reserved for statutes that "simply ha[ve] no core," "in the sense that no standard of conduct is specified at all." *Id.* (citation and quotation marks omitted). That is not the case with respect to Section 924(c), where courts have had no difficulty finding a core of cases that clearly fall within the provision. *See, e.g., United States v. Ienco*, 92 F.3d 564, 569 (7th Cir. 1996) (conspiracy to commit extortion is a crime of violence under 18 U.S.C. § 924(c)(3)(B)). "The strong presumptive validity that attaches to an Act of Congress has led th[e] Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963).

In his Section 2255 motion, Petitioner challenges the definition of "crime of violence" in Section 924(c)(3)(B) as unconstitutionally vague but does not (and cannot) challenge the statute as applied to the facts of this case. As noted above, the statute cannot said to be vague in this case where the "crime of violence" was premised upon the successful shooting of a rival gang member.

**3. The Residual Clause of Section 924(c) is Not Unconstitutionally Vague.**

Even if the claim is not barred, it should be denied because § 924(c)(3)(B) is not unconstitutionally vague and Petitioner does not cite to any cases in support of his argument.

As noted above, the Supreme Court's ruling in *Johnson* did not involve the statutory provision at issue in this case, § 924(c)(3)'s definition of "crime of violence." Nor has the Seventh Circuit held that § 924(c)(3) is unconstitutionally vague. In fact, the only federal appellate court to decide the issue rejected a vagueness challenge to the statute based upon *Johnson*. *See United States v. Taylor*, 814 F.3d 340, 375-379 (6th Cir. 2016). Although the Seventh Circuit's decision in *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (2015), addressed the constitutionality of a similar statute, 18 U.S.C. § 16(b), the reach of that decision is limited as explained below.

Both *Johnson* and *Vivas-Ceja* dealt with a "sentencing statute." *Vivas-Ceja*, 808 F.3d at 722. Specifically, Section 16(b) increased the maximum punishment for a felon who illegally reentered the country from ten to twenty years if the prior felony was for a "crime of violence." *Id.* at 720-721. The Seventh Circuit was

principally troubled that the statute "offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'" *Id.* at 722.

Section 924(c)(3)(B) is not a sentencing statute. Nor does it identify predicate convictions for the purpose of a recidivist enhancement. Instead, it provides a statutory offense that must be admitted by a defendant or proved to a jury beyond a reasonable doubt. To convict, the jury must find that the charged "crime of violence" was perpetrated with a sufficient nexus to a firearm. That important limitation narrows the type of offenses that might serve as predicates to ones that could be committed with such a nexus. It thus provides more specific guidance than do either ACCA or Section 16(b) as to whether risk in the ordinary case qualifies as "substantial."

Moreover, by definition, Section 924(c)(3)(B) is limited to federal felonies. Thus, unlike the statutes at issue in *Johnson* or *Vivas-Ceja*, where courts may have to review decades-old charging documents or plea transcripts to decide under which portion of a divisible statute a defendant was charged, here courts need only examine the terms of the indictment (and perhaps the evidence presented at trial) in assessing the validity of the charge. *United States v. Dervishaj*, 2016 WL 1019357, *6 (E.D.N.Y. 2016). In the context of § 924(c), there is no need for the Court to assess risk in an "ordinary case"; rather, the Court can assess whether the predicate offense actually involved the use of force or a substantial risk that physical force against the person or property of another may be used.

Even *Johnson* acknowledged that some ambiguity in criminal statutes, including the very use of the phrase "substantial risk," can be tolerable. 135 S. Ct. at 2560. The additional limitations presented in Section 924(c)(3)(B) and cited above distinguish it from ACCA and Section 16(b). Because the statute is constitutional, Petitioner's argument fails.

#### 4. ***Vivas-Ceja* Was Incorrectly Decided.**

As explained above, this case is distinguishable from *Vivas-Ceja*. To the extent the Court views matters otherwise, however, the United States submits that *Vivas-Ceja* was decided incorrectly. Even after *Johnson*, Section 924(c)(3)(B) and its sister statute Section 16(b) remain constitutional. Both statutes are materially narrower than ACCA. Unlike ACCA, Section 924(c)(3)(B) contains no confusing list of enumerated offenses; it has been limited to the narrow risk that the defendant will use force during the commission of the offense; and courts have never disagreed about its proper construction. Based on these differences, *Johnson* does not support Petitioner's claim that Section 924(c)(3)(B) is vague.

##### a. **The enumerated offenses in ACCA are absent from Sections 924(c)(3)(B) and 16(b).**

The structure of § 924(c)(3)(B) and Section 16(b) differs from ACCA because it contains no introductory list of enumerated crimes followed by an "otherwise" provision that the Supreme Court treated as qualifying the predicate offenses. The presence of the enumerated list of offenses was a determinative factor in *Johnson* that had troubled the Court for years. *See, e.g., James v. United States*, 550 U.S. 192, 215-216, 230 n.7 (2007) (Scalia, J., joined by Stevens and Ginsburg, JJ.,

dissenting) (comparing a predicate offense with its closest analog among enumerated offenses is unhelpful if the analog is not obvious because the listed offenses have little in common); *Begay v. United States*, 553 U.S. 137, 143 (2008) (noting concern that "the examples are . . . far from clear in respect to the degree of risk each poses").

The continuing confusion over how to interpret the enumerated list, in conjunction with the residual clause, ultimately convinced the Court of ACCA's vagueness. The interpretive difficulties posed by the list of enumerated crimes pervaded the Court's analysis. For example, *Johnson* attributed "uncertainty about how much risk it takes for a crime to qualify" to the residual clause's structure, which "forces courts to interpret 'serious potential risk' in light of the four enumerated crimes." 135 S. Ct. at 2558. The Court again referred to the enumerated crimes in explaining why its now-overruled decisions in *Begay* and *Sykes v. United States*, 564 U.S. 1 (2011), did "not succeed in bringing clarity to the meaning of the residual clause." *Johnson*, 135 S. Ct. at 2259. And, critically, the Court distinguished other unspecified statutes requiring risk-based assessments in part because they did not "link[ ] a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561. Section 924(c)(3)(B), like the statutes the Court distinguished in *Johnson*, contains no "confusing list" to cloud its analysis. *Taylor*, 814 F.3d at 377 (upholding § 924(c)(3)(B) because it "does not complicate the level-of-risk inquiry by linking the 'substantial risk' standard, through the word otherwise, 'to a confusing list of examples'").

### b. Section 924(c)(3)(B) is materially narrower than ACCA's residual clause.

Another uncertainty about ACCA's residual clause identified in *Johnson*, but absent from Section 924(c)(3)(B), is the necessity for courts to go "beyond evaluating the chances that the physical acts that make up the crime will injure someone" and to evaluate the risk for injury even "after" completion of the offense. 135 S. Ct. at 2557; *see also id.* at 2559 (noting that "remote" physical injury could qualify under ACCA, but that the clause does not indicate "how remote is too remote"). The Court explained that ACCA's inquiry into whether a crime "involves conduct" that presents too much risk of injury goes beyond the offense elements. *Id.* at 2557.

In contrast, Section 924(c)(3)(B) is significantly narrower. Unlike ACCA, it applies only when the risk of force occurs "'in the course of committing the offense.'" 18 U.S.C. § 924(c)(3)(B). This means the assessment is confined to risks arising during the offense's commission. *United States v. Serafin*, 562 F.3d 1105, 1113 (10th Cir. 2009) (emphasizing that text of Section 924(c)(3)(B), unlike ACCA, requires heightened showing that "the risk of force actually arises in the course of committing the offense, and not merely as a probable, or even possible, result"); *Taylor*, 814 F.3d at 377. Unlike ACCA, Section 924(c)(3)(B) does not go beyond "the physical acts that make up the crime." *Johnson*, 135 S. Ct. at 2557. Further, Section 924(c)(3)(B) looks at the risk of the "use of force" rather than the much broader "risk of injury." *Taylor*, 814 F.3d at 376-377 ("Risk of physical force against a victim is much more definite than risk of physical injury to a victim."). And it "requires that the person who may potentially use physical force be the offender." *Id.* at 377.

Section 924(c)(3)(B)'s focus on the use of force by the offender during an offense, rather than on the offense's potential risk and effects, limits the statute's reach and avoids the kind of speculation about extra-offense conduct that *Johnson* denounced. *See id.* at 2557, 2559.

**c. The Supreme Court has not "repeatedly" failed to construe Section 924(c)(3)(B).**

Another significant difference between *Johnson* and the instant statute is the Supreme Court's emphasis on its own "repeated" inability to develop a "principled and objective standard" for ACCA. 135 S. Ct. at 2558. This concern, also absent here, further animated the Court's decision to find ACCA vague. *See id.* at 2559 (noting that Johnson is the Court's "fifth [case] about the meaning of the [ACCA] residual clause"); *Taylor*, 814 F.3d at 378. The Court expressed frustration that its ACCA decisions had been a "failed enterprise." 135 S. Ct. at 2560.

In contrast, the Court has never taken a case interpreting Section 924(c)(3)(B). The Supreme Court's one significant decision interpreting Section 16(b) was unanimously rendered over a decade ago. *Leocal v. Ashcroft*, 543 U.S. 1, 3 (2004). In *Leocal*, the Court had little difficulty adopting an interpretive framework that identified one offense (burglary) as the "classic example" of a residual clause "crime of violence" and another offense (DUI) that did not qualify. The Court's analysis (joined by Justice Scalia, the author of *Johnson*) belies a claim that Section 924(c)(3)(B) is too uncertain to be readily and evenhandedly applied.

Most recently, in *Torres v. Lynch*, 136 S. Ct. 1619 (2016), the Supreme Court interpreted the definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43). In

holding that a state offense lacking an interstate commerce requirement can qualify, the Court reasoned in part that a contrary view would "exclude[ ] state and foreign convictions for many of the gravest crimes listed in § 1101(a)(43)." *Id.* at 1628. Three dissenting justices disputed this point, asserting that "[m]ost serious offenses" would still qualify under § 1101(a)(43)(F), which incorporates the crime-of-violence definition in Section 16(b). *Id.* at 1637 (Sotomayor, J., dissenting). The dissent listed as examples, arson, kidnapping, and conspiracy to kidnap, and cited in support a decision holding that arson is a crime of violence under Section 16(b). *See id.* at 1637 & n.1 (citing *Santana v. Holder*, 714 F.3d 140, 145 (2d Cir. 2013)). In response, the majority "agree[d] that state counterparts of some enumerated federal offenses would qualify as aggravated felonies through the 'crime of violence' provision,'" but cautioned that "not nearly all such offenses" would be picked up, including demanding a ransom, receiving child pornography, and possessing a firearm. *Id.* at 1629.

The Court's discussion in *Torres* suggests that, unlike ACCA's residual clause, Sections 16(b) and 924(c)(3)(B) are not "a black hole of confusion and uncertainty." Both the majority and dissent in *Torres* readily identified offenses that fell within and beyond the "crime of violence" definition. *Torres* further confirms that Section 924(c)(3)(B)'s definition is capable of principled application.

**d. The differences between the statutes matter.**

This Court held in *Vivas-Ceja* that, post-*Johnson*, any statute requiring a court to assess risk in an "ordinary case" under the categorical approach is unconstitutional. *Vivas-Ceja*, 808 F.3d at 723. As the above analysis shows, that

analysis was overly simplistic. *Johnson* made quite clear that a combination of factors tipped the balance toward the conclusion that ACCA's residual clause was vague: "the uncertainties in [the] residual clause may be tolerable in isolation," but, taken together, they rendered the provision so "shapeless" that "to condemn someone to prison for 15 years to life" under the residual clause did not comport with due process. *Johnson*, 135 S. Ct. at 2560. None of those additional factors are present here. Petitioner's claim should be denied.

### E. Supplemental Claim D: Plain Error

Petitioner's supplemental "Claim D," asserts that there was "plain error" based upon, "the government broadening of the superseding indictment by adding a predicate RICO act element namely assault with a dangerous weapon, an element that was not charge[d] in the RICO count of the superseding indictment." (Dkt. 12 at 4.) As discussed above, Petitioner was charged with a substantive VCAR violation independent of the RICO conspiracy. Petitioner's claim should be denied.

### F. Petitioner Is Not Entitled to an Evidentiary Hearing.

Where, as here, the record conclusively demonstrates that Petitioner is not entitled to relief, a § 2255 motion shall be denied without a hearing. *See United States v. Cooper*, 378 F.3d 638, 641-42 (7th Cir. 2004) (affirming district court's denial of § 2255 motion without a hearing where the existing record established that defendant's counsel was not deficient); *see also* Rule 4 of the Rules Governing Section 2255 Proceedings Before the United States District Courts. That is similarly the case where Petitioner's allegations are vague, conclusory, and speculative. *See Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006); *Gallo-*

*Vazquez v. United States*, 402 F.3d 793, 797 (7th Cir. 2006). Based upon the record and governing law, however, the government submits that it is clear that the Petitioner is not entitled to relief.

## IV. CONCLUSION

For all of the foregoing reasons, the government respectfully requests that the Court deny Petitioner's claims of ineffective assistance of counsel, and other claims for relief, without an evidentiary hearing.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: */s/ Matthew J. Hernandez*
MATTHEW J. HERNANDEZ
Assistant U.S. Attorney
219 South Dearborn, Fifth Floor
Chicago, Illinois 60604
(312) 353-5300

Dated: June 16, 2016

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that this document was served on June 16, 2016, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing ("ECF") pursuant to the district court's system as to ECF filers, as well as sent via U.S. Mail to the address below:

Vicente Garcia
Reg. No. 43509-279
U.S.P. Big Sandy
P.O. Box 2068
Pekin, IL 61555-5000

/s/ Matthew J. Hernandez
Matthew J. Hernandez
Assistant United States Attorney