**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| VICENTE GARCIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 16 CV 859 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### OPINION AND ORDER

Before the Court is Petitioner Vicente Garcia's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the following reasons, the motion is denied.

### I. BACKGROUND

This § 2255 petition comes after an "extensive criminal prosecution aris[ing] out of the operations of the Latin Kings street gang in Chicago from 2000-2008." United States v. Garcia, 754 F.3d 460, 465 (7th Cir. 2014). Vicente Garcia ("Petitioner") was one of fifteen high-ranking gang leaders indicted for violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute and a host of other crimes. Specifically, Petitioner was charged by superseding indictment with: (1) participating in a RICO conspiracy in violation of 18 U.S.C. § 1962(d); (2) conspiring to commit extortion in violation of 18 U.S.C. § 1951; (3) committing assault with a dangerous weapon in aid of racketeering in violation of 18 U.S.C. § 1959(a)(3); (4) using and carrying a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c); (5) conspiring to distribute cocaine in violation of 21 U.S.C. § 846; and (6) possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). These charges were in

connection with Petitioner's roles as a Supreme Regional Inca and Regional Inca of the Latin Kings in the Little Village neighborhood in Chicago. Supreme Regional Incas were immediately below the Coronas, the highest ranking officers nationwide. Supreme Regional Incas oversaw gang operations in regions within each of their designated geographic areas, implemented gang rules, ensured punishment for rules violations, and directed retaliation against rival gangs. Regional Incas also managed gang operations, but did so in a smaller territory than Supreme Regional Incas.

On April 6, 2011, the jury returned a guilty verdict as to all counts. Prior to sentencing, the Probation Office's Presentence Investigation Report ("PSR") listed Petitioner's total offense level as 43, Petitioner's criminal history category as level III, and a guidelines range of life imprisonment. On November 12, 2012, Petitioner filed objections the PSR and his sentencing memorandum in support of a variance. On January 31, 2013, the Government filed its position paper, which urged the Court to impose a sixty-year sentence.

On May 2, 2011, Petitioner's trial counsel moved to withdraw. Counsel was the fourth attorney of record and the third CJA Panel attorney appointed to represent Petitioner. On May 13, 2011, the Court denied counsel's motion. Thereafter, Petitioner retained a new attorney. On May 31, 2011, the new attorney filed his notice of appearance. On July 6, 2011, the Court permitted Petitioner's previous counsel to withdraw.

On February 8, 2013, Petitioner appeared for sentencing. The Court sentenced Petitioner to 240 months in prison on Counts One, Two, Nine, Ten, and Fourteen; 60 months on Counts Eleven and Thirteen; and 360 months on Count Twelve. All of these terms were to run concurrently. Finally, the Court ordered Petitioner to serve 120 months in prison on Count Three, which was to run consecutively to the other counts.

On February 20, 2013, Petitioner timely noticed his appeal before the Seventh Circuit challenging both his conviction and sentence. The court of appeals consolidated Petitioner's appeal with eight of his co-defendants.[1] Petitioner submitted his appellate brief on August 15, 2015. The appeal raised the following arguments: "(1) the "half-Pinkerton" instruction violated his rights; (2) his convictions for violent crimes in aid of racketeering ("VICAR") violated his Double Jeopardy rights; (3) his mandatory minimum sentence for use of a firearm violated the Supreme Court's rule in Alleyne; (4) his conviction on count 9 for a violent crime in aid of racketeering should be set aside for insufficient evidence; (5) the evidence on his extortion conviction was insufficient; (6) the court erred by refusing to grant a mistrial after the jury saw some of the defendants being escorted by U.S. marshals; (7) the court applied the wrong standard of proof at sentencing; and (8) the court improperly applied the sentencing guidelines." Garcia, 754 F.3d at 475. On June 13, 2014, the Seventh Circuit affirmed both the conviction and sentence. Thereafter, the Supreme Court of the United States denied Petitioner's writ of certiorari.

On January 19, 2016, Petitioner filed this § 2255 motion along with his memorandum of law. On May 9, 2016, Petitioner submitted what is styled as an affidavit of facts, but in reality, sets forth four new arguments in support of his petitioner. On June 16, 2016, the Government submitted its response to Petitioner's filings. Between June 27, 2016 and August 4, 2016—subsequent to the Government filing its response brief—Petitioner filed four more affidavits of fact and a letter to the Court. On, August 22, 2016, without leave of Court, Petitioner submitted a "Clarified Amended Motion to Vacate Conviction Under 18 U.S.C. § 2255." The Court denied the Clarified Amended Motion without prejudice, and Petitioner never refiled the motion.

---

[1] The co-defendants were Luis Garcia, Felipe Zamora, Fernando King, Samuel Gutierrez, Javier Ramirez, Jose Guzman, Augustin Zambrano, and Alfonso Chavez.

## II. DISCUSSION

### A. Standard of Review

Section 2255 allows a federal prisoner to vacate, set aside, or correct his sentence when his judicial process contained "'an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940 F.2d 215, 217 (7th Cir. 1991)); see also 28 U.S.C. § 2855. The Sixth Amendment guarantees criminal defendants "the right to effective assistance of counsel." Missouri v. Frye, 132 S. Ct. 1399, 1404 (2012) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)). To prevail on an ineffective assistance of counsel claim a petitioner must show that: (1) "counsel's performance was deficient," and that (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. To establish deficient performance, "the petitioner must show 'that counsel's representation fell below an objective standard of reasonableness.'" Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011) (quoting Strickland, 466 U.S. at 688). Counsel has discretion to pursue a competent legal strategy; therefore, the Court's review of counsel's performance is "highly deferential" and the Court applies "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Yu Tian Li v. United States, 648 F.3d 524, 527-528 (7th Cir. 2011) (citing Strickland, 466 U.S. at 689).

### B. Petitioner's Arguments in Support of His Section 2255 Petition

Petitioner raises nineteen vague, scarcely supported arguments in his memorandum of law. He couches the vast majority of the claims in terms of ineffective assistance of counsel in an attempt to circumvent § 2255's restrictions on collateral relief and procedural default. See Williams v. United States, 805 F.2d 1301, 1303 (7th Cir. 1986) (failure to raise constitutional

4

challenges on direct appeal bars a petitioner from raising the same issues in a § 2255 proceeding absent a showing of good cause and actual prejudice resulting from the alleged constitutional violation). Petitioner also filed what is styled as an "Affidavit of Facts"; however, he essentially raises four new claims. The Court addresses Petitioner's arguments in turn. Because many of the arguments are threadbare, redundant, or Petitioner failed to raise them on direct appeal, the Court need not address all of Petitioner's arguments in substantial detail.

### 1. Claim One

Petitioner first argues that the Court lacked subject matter jurisdiction over his trial because the Government failed to establish standing by presenting the Court with a case or controversy. Federal district courts have original jurisdiction over all violations of federal law. 18 U.S.C. § 3231. The Government prosecuted Petitioner for numerous violations of the United States Code. Thus, the Court had proper jurisdiction, so Petitioner's argument fails.

### 2. Claim Two

Petitioner next argues that trial counsel was ineffective by failing to challenge the sufficiency of the indictment. He argues that the indictment is deficient because it does not provide the pattern of racketeering activity and does not give adequate notice of the predicate acts. Petitioner claims that, as a result, he could not adequately prepare a defense. He also states that Count Ten, which alleges a Hobbs Act violation, failed to allege an overt act and did not state the names of the extortion victims. Petitioner's argument is undeveloped, as it provides no factual support and no citation to legal authority outside of establishing a defendant's right to be apprised of the charges against him. Thus, Petitioner has waived this argument. See Mahaffey v. Ramos, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.") (citation omitted).

Assuming *arguendo* that waiver did not apply, Petitioner's claim still fails. As the Government correctly identifies, "[n]either overt acts, nor specific predicate acts that the defendant agreed personally to commit, need be alleged or proved for a section 1962(d) offense." United States v. Glecier, 923 F.2d 496, 500 (7th Cir. 1991) (internal citations omitted). As to the Hobbs Act violation, the indictment indeed states that the defendants received payments from an organization that was illegally selling fraudulent immigration documents. Petitioner is wrong in stating that the Government must identify individual names of the victims. See United States v. Roya, 574 F.2d 386, 391 (7th Cir. 1978) (rejecting the argument that the failure to state the names and addresses of individuals warrants dismissal of an indictment because "[t]he test is whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial.") (internal citations omitted). Thus, the indictment in this case passes muster.

### 3. Claim Three

Petitioner believes that trial counsel was ineffective for failing to sever Counts 12 and 13 for crack cocaine distribution. He asserts that the sales of cocaine were too temporally disconnected to be charged together. First, Petitioner provides nothing more than the bald assertions that the drug sales were not part of the same series of acts or transactions, the counts should have been severed, and he suffered grave injustice and prejudice. Petitioner fails to set forth any factual support or legal authority justifying his position. For that reason, his argument fails. See Ramos, 588 F.3d at 1146 (citation omitted) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."); see also United States v. Velasquez, 772 F.2d 1348, 1352 (7th Cir. 1985) ("In practice, severe prejudice is required for an order of severance and the trial judge's refusal to sever is rarely reversed.").

Second, the Government is correct that the indictment may properly charge a defendant in separate counts where those charges are of the same or similar character. <u>Velasquez</u>, 772 F.2d at 1352 (citing Fed. R. Crim. P. 8(a)). Both counts charged Petitioner with selling crack cocaine. For this additional reason, trial counsel was not ineffective for not moving to sever the counts.

### 4. Claim Four

Petitioner argues that trial counsel was ineffective for withdrawing a motion to suppress firearms and, in the alternative, for failing to object to the admissibility of the firearms. First, the Government is correct that no basis for suppression existed. The firearms were found at a storage facility in response to an employee of that facility calling the police. That employee alerted the police because he observed the firearms and ammunition in a unit considered to be vacant, yet the locker suspiciously had a lock on it. Trial counsel's decision to withdraw the motion to suppress was reasonable in light of the parties' briefing on the issue. Petitioner could not show a reasonable expectation of privacy because (1) the guns were originally seized by a property manager; and (2) the guns were located in a locker not rented by Petitioner. <u>See</u> <u>Rakas v. Illinois</u>, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.") (citation omitted); <u>see generally</u> <u>United States v. Jones</u>, 565 U.S. 400 (2012) (discussing reasonable expectation of privacy).

Additionally, Petitioner is wrong in his assertion that trial counsel failed to object to the admissibility of the firearms. <u>See</u> Gov't Resp. at 14 (citing Tr. at 1549-51)[2] (discussing trial counsel's objection to the admissibility of evidence obtained from the storage locker and the Court's consideration of the matter pursuant to Federal Rules of Evidence 401, 402, and 403).

---

[2] Citations trial proceedings are from Case No. 08 CR 746-2.

Even Petitioner's new, retained trial counsel raised the issue on motion for a new trial or judgment of acquittal. See id. (citing R. 909, Mot. for New Trial or Judgment of Acquittal at 2). Thus, Petitioner's lawyers carried out a reasonable trial strategy by withdrawing a meritless suppression motion. Additionally, because trial counsel indeed challenged the admissibility of the firearms, Petitioner's contention that the firearms were inadmissible fails because he could have raised the matter on direct appeal before the Seventh Circuit, but he did not. White v. United States, 371 F.3d 900, 902 (7th Cir. 2004) (prisoners are forbidden from relitigating in a collateral proceeding an issue that was decided on direct appeal).

### 5. Claim Five

Petitioner asserts that trial counsel was ineffective due to his failure to properly brief and/or argue the issue of lay testimony on the interpretation of phone conversations. Petitioner cites Federal Rule of Evidence 701 for the proposition that lay witnesses cannot testify in the form of an opinion when it is based on scientific, technical, or other specialized knowledge within the scope of Rule 702. However, the Court agrees with the Government's position that Petitioner failed to point to any testimony that was scientific, technical, or other specialized knowledge within the scope of Rule 702. Accordingly, no basis exists upon which Petitioner can establish that counsel failed to properly brief and/or argue the issue of lay testimony.

Petitioner also claims that appellate counsel's failure to properly brief or argue the issue of lay testimony on the interpretation of phone conversations justifies a finding of ineffective assistance. This Court does not review proceedings before the Seventh Circuit and therefore rejects this argument as it pertains to this § 2255 petition.[3]

---

[3] In several of his claims, Petitioner asserts ineffective assistance of both trial and appellate counsel. For the reason stated in Claim Five, the Court does not address further contentions regarding appellate counsel's representation.

### 6. Claim Six

Petitioner states that counsel was ineffective for failing to argue and instruct the jury about agreements with informants or a buyer-seller relationship. Petitioner's argument is premised upon the erroneous belief that the evidence showed a mere buyer-seller relationship on isolated occasions and mere possession of drugs. The Government correctly identifies that, in affirming the convictions in this case, the Seventh Circuit stated, "the evidence of conspiracy in the present case was strong; indeed, [Petitioner's co-defendant] admitted that a drug conspiracy existed." Gov't Resp. at 17 (citing Garcia, 754 F.3d at 480) (internal quotation marks omitted). The Court agrees with the government that counsel reasonably pursued the trial strategy of attacking the credibility of the government's witnesses, the meaning of recorded conversations, and the sufficiency of the evidence. See Strickland, 466 U.S. at 689 (courts are highly deferential to counsel's performance). The Seventh Circuit's finding that strong evidence of a conspiracy existed also undermines Petitioner's position that he suffered prejudice as a result of counsel's strategy. Thus, Petitioner's argument fails.

### 7. Claim Seven

In his seventh claim, Petitioner asserts that trial counsel was ineffective for failing to challenge the sufficiency of the extortion count. Petitioner waives his challenge on both bases asserted: (1) jurisdiction; and (2) that no proof of asset depletion exists. Petitioner's argument is void of any factual or legal support for his argument. He no more than baselessly asserts the aforementioned two grounds and a conclusion of ineffective assistance of counsel. Thus, there is

nothing to meaningfully review, and his argument fails. See Ramos, 588 F.3d at 1146 (citation omitted).[4]

The Government also correctly argues that trial counsel indeed challenged these issues and that the Government presented witnesses connecting the extortion victims to interstate commerce. See Gov't Resp. at 20 (citing Tr. at 2938 and R. 1262 at 1-4) (trial counsel stating that "there is nothing to connect the [M]iqueros and the extortion in this case with [Petitioner]" and subsequent trial counsel arguing that "the [G]overnment failed to prove that [Petitioner] committed extortion against the Miqueros."). Thus, Petitioner's argument disingenuously sets forth an erroneous record. Also, the Seventh Circuit explicitly addressed the sufficiency of the evidence supporting Petitioner's extortion conviction and affirmed the conviction. Garcia, 754 F.3d at 476. As a result, Petitioner's argument must fail. White, 371 F.3d at 902.

### 8. Claim Eight

Petitioner again attacks trial counsel's performance with respect to the sufficiency of the evidence supporting the extortion count. This time, he argues that counsel failed to note, object to, or argue the lack of corroborating evidence. As stated above with respect to Petitioner's seventh argument, the Seventh Circuit affirmed the sufficiency of the evidence, Garcia, 754 F.3d at 476, so Petitioner's claim again fails. See White, 371 F.3d at 902.

### 9. Claim Nine

Petitioner's next argument asserts ineffective assistance of trial counsel on the basis that counsel failed to correct false testimony. The Court agrees with the Government that Petitioner's argument is vague and entirely conclusory, and it provides nothing for this Court to meaningfully review. Other than citing the transcript for the existence of confidential informant testimony,

---

[4] In Case No. 15 CV 10156, Petitioner's co-defendant, Fernando King, asserted a similar, but more developed, jurisdictional challenge. In a detailed explanation and on several independent grounds, the Court found that jurisdiction was proper. Order of March 9, 2017 at 3.

Petitioner's brief never addresses how the testimony was false. His perfunctory argument therefore fails. See <u>Ramos</u>, 588 F.3d at 1146 (citation omitted).

### 10. Claim Ten

Petitioner disingenuously argues that the "corpus delecti rule" precludes his conviction on the basis of only an uncorroborated statement. This merits little attention because, as explained *supra*, the evidence was built upon much more than an uncorroborated statement, and the Seventh Circuit affirmed all of the convictions.

### 11. Claim Eleven

In his eleventh argument, Petitioner attempts to revive his ineffective assistance of counsel argument on the basis that this Court lacked jurisdiction with respect to the VICAR charge. The Government correctly argues that its evidence presented at trial showed that the Latin Kings' enterprise affected interstate commerce. Specifically, the Government put forth evidence of extortion of the Miqueros, whose fraudulent identification scheme involved interstate and foreign dealings; the distribution of drugs across state lines; and the use and sale of firearms, which traveled in interstate commerce.

Moreover, Petitioner's argument that the Government was required to show a substantial effect on interstate commerce is error. See <u>United States v. Anderson</u>, 809 F.2d 1281, 1286 (7th Cir. 1987) ("Only a realistic probability of a nexus. . .between the extortionate conduct and interstate commerce is required") (internal quotation marks and citation omitted); <u>United States v. Campbell</u>, 770 F.3d 556, 572 (7th Cir. 2014) (The impact on commerce need not be actual; instead, it is sufficient that the conduct had the potential to impact commerce); <u>United States v. Bailey</u>, 227 F.3d 792, 797 (7th Cir. 2000) (the Government may prove jurisdiction by showing a

*de minimis* or otherwise slight effect on interstate commerce). Accordingly, the Court again rejects Petitioner's jurisdictional challenge.

### 12. Claim Twelve

Petitioner's twelfth argument asserts ineffective assistance of trial counsel for the failure to object to the Government's closing arguments. Specifically, Petitioner believes that the Government ran afoul of the law by arguing that (1) possession of firearms affected interstate commerce; and (2) the Miqueros were engaged in interstate commerce, so the extortion scheme affected interstate commerce.

The Government did not misstate the law or misrepresent the facts developed at trial. First, the Government correctly points out that it argued that the Latin Kings' use and possession of firearms that were transported across state lines evinced their activities affecting interstate commerce. Second, the Government cited testimony stating that the Miqueros crossed international and state borders and utilized software from Mexico in the operation of their fraudulent identification scheme. Thus, there was no reasonable basis upon which trial counsel could have objected, so there can be no finding of ineffective assistance.

### 13. Claim Thirteen

In his thirteenth argument, Petitioner states that counsel was ineffective for failing to object to the Government's "Hey Batta, Batta" closing argument. Again, there is nothing to which trial counsel could have credibly objected. Rather, the Government correctly argues that it used a common phrase in order to argue that the defense strategy was to divert the jurors' focus from the evidence. See United States v. Xiong, 262 F.3d 672, 675 (7th Cir. 2001) (Statements seeking to undermine the defendant's defense are not improper; "[t]hese remarks were likewise directed at the defendant's case not defense counsel. Moreover, it was proper for the prosecutor

12

to comment on the lameness of the defendant's case.") (citations omitted). Accordingly, counsel was well within the realm of reasonableness in declining to object, and Petitioner suffered no prejudice from trial counsel's decision not to object to the "Hey Batta, Batta" argument.

### 14. Claim Fourteen

Petitioner's fourteenth claim argues that trial counsel was ineffective for failing to object to the admission of the Latin King Manifesto documents, which Petitioner alleges were hearsay and in violation of the Confrontation Clause of the Constitution. The Court adopts the Government's position and finds that Petitioner misunderstands the nature of the hearsay rule. "If…an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the hearsay rule does not apply." Lee v. McCaughtry, 892 F.2d 1318, 1324 (7th Cir. 1990) (quotation marks and emphasis in original) (citation omitted). Where statements are not admitted for the truth of the matter asserted, the Confrontation Clause is not implicated. Id. at 1323. Here, as the Government points out, the prosecution used the Manifesto to provide evidence of the existence of the racketeering enterprise and not the truth of the Manifesto itself. Accordingly, Petitioner did not suffer a constitutional violation.

### 15. Claim Fifteen

Plaintiff's fifteenth argument asserts ineffective assistance of trial counsel for the failure to investigate and call the Miqueros, the extortion victims, as witnesses. Specifically, Petitioner believes that Julio Leija Sanchez's ("Sanchez") testimony would have proven that Petitioner was not guilty. As Petitioner acknowledges, Sanchez "was convicted as the lead defendant in the Miqueros trial, and. . .was incarcerated at the time of [Petitioner's] trial." Pet.'s Br. at 17-18. Petitioner goes on to say that "[h]ad Mr. Mejia [sic] Sanchez been called as a witness at trial he

would have testified that no such extortion existed." Id. at 18. Petitioner also attaches an affidavit from Sanchez, which states that Sanchez did not have knowledge of the Latin Kings extorting the Miqueros.

First, Petitioner erroneously asserts, without citation to authority, that the Government had to call extortion victims in order to carry its burden. This is patently false. The Government has no obligation to put on a defendant's preferred case by presenting a defendant's preferred evidence. Additionally, the Seventh Circuit affirmed the convictions and the sufficiency of the evidence in support thereof. Garcia, 754 F.3d at 476 ("[Petitioner] contends that the evidence of extortion was insufficient, but we explained in the section on Zambrano why there was enough in the record to support the jury's finding in this respect."). The Government therefore properly carried its burden.

Second, trial counsel was well within the wide range of reasonable professional assistance under Strickland in his decision not to call a witness that was convicted, incarcerated, and provided no more than a bald assertion with no evidence of credibility. The Court therefore finds that trial counsel pursued a competent strategy in declining to call Sanchez as a witness.

### 16. Claim Sixteen

Petitioner's sixteenth argument contends that he was deprived of effective assistance of counsel because trial counsel did not object to the expert testimony of an ATF agent regarding interstate commerce. Petitioner argues that "[t]his sort of testimony is normally used when the government is proving a case of felon in possession." Pet.'s Br. at 19. However, Petitioner fails to set forth any legal authority whatsoever in support of this proposition. Thus, his claim is waived. See Ramos, 588 F.3d at 1146 (citation omitted).

Additionally, the ATF agent was qualified as an expert witness pursuant to Federal Rule of Evidence 702, and, as set forth above with respect to Petitioner's twelfth challenge, firearm evidence was directly relevant to the Government's burden of proving that the Latin Kings' operations affected interstate commerce. As such, contrary to Petitioner's argument, a strong reason existed for the introduction of the ATF agent's testimony. Petitioner's rights were therefore not violated.

### 17. Claim Seventeen

Petitioner's seventeenth argument reformulates his assertions that trial counsel failed to challenge the Court's jurisdiction. Petitioner argues that RICO requires a showing of an effect on interstate commerce. He states that "it is clear that there was no existing actual conspiracy to commit a RICO [violation]. . . .," Pet.'s Br. at 20, and that the Government falsely created and maintained the interstate commerce element. Having already established that no jurisdictional flaw existed, the Court rejects Petitioner's redundant argument. The Government is correct in its position that Petitioner's unsupported statement that he was "a victim of [cooperating witness] Shanna's manufactured RICO scheme," id., is meritless and does nothing to further his jurisdictional challenge.

### 18. Claim Eighteen

Petitioner's eighteenth argument asserts ineffective assistance of counsel due to counsel's failure to challenge the existence of an overt act. The Court rejects this argument because, as discussed *supra*, the Seventh Circuit affirmed the sufficiency of the evidence. Garcia, 754 F.3d at 476 ("[Petitioner] contends that the evidence of extortion was insufficient, but we explained in the section on Zambrano why there was enough in the record to support the jury's finding in this

respect."). Thus, Petitioner cannot have suffered any unconstitutional prejudice, and he cannot file this motion in order to effectively receive a second appeal. White, 371 F.3d at 902.

### 19. Claim Nineteen

Petitioner's nineteenth and final argument in his memorandum of law is that he was deprived of effective assistance of counsel because trial counsel failed to challenge the cross reference under § 2A1.1 of the sentencing guidelines. Petitioner is wrong. Counsel objected to the application of the guidelines, arguing that Petitioner could not be held responsible for murders and attempted murders. See Gov't Resp. at 30 (citing R. 1263, Pet.'s Objections to PSR and Sentencing Memorandum at 12-13). In Petitioner's objections the PSR and Sentencing Memorandum, he asserted that such offenses were not charged or presented to the jury. See id. In fact, appellate counsel even raised this same issue on appeal. See id. (citing App. R. 14 at 28-29). Because this Court and the Seventh Circuit already rejected Petitioner's argument, his claim is again denied. Petitioner's § 2255 petition is not a vehicle for a new appeal. White, 371 F.3d at 902.

## B. Petitioner's Affidavit of Facts

In addition to his original § 2255 petition, Petitioner filed an "Affidavit of Facts." Therein, Petitioner requested to "amend the following claims to the pending Section 28 U.S.C. [§] 2255 motion." Aff. of Vicente Garcia at 1. However, the substance of the submission presents four new claims added on to the nineteen claims addressed above.

### 1. Claims One, Two, and Four

Petitioner's first claim asserts a new basis for ineffective assistance of trial counsel. He asserts that counsel failed to object to the Government's broadening of the superseding indictment by adding the predicate RICO act of assault with a dangerous weapon. Second,

Petitioner claims appellate counsel provided ineffective assistance by failing to raise the "constructive amendment of the superseding indictment and the jury's failure to return a constitutional verdict..." Aff. of Vicente Garcia at 3. Petitioner's fourth new argument states that there was plain error because the Government broadened the superseding indictment. Specifically, he argues that the Government added the predicate RICO element of assault with a dangerous weapon, which was not charged in the RICO count of the superseding indictment.

The Court agrees with the Government that these claims are time-barred because the model form Petitioner originally filled out expressly stated, "CAUTION If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date." Model Motion Under 28 U.S.C. § 2255 at 3. Petitioner had already raised nineteen mostly frivolous and redundant arguments in his original petition and should have filed these claims in that original petition.

As to the ineffective assistance of appellate counsel, as stated above, this Court does not review proceedings before the Seventh Circuit. Also, regarding Petitioner's fourth claim, the Government correctly states that Petitioner was charged with a VICAR violation independent of the RICO conspiracy charge. For these additional reasons, the Court rejects Petitioner's first, second, and fourth arguments.

### 2. Claim Three

Petitioner's third supplemental claim asserts that his conviction pursuant to 18 U.S.C. § 924(c)(1) "has been ruled unconstitutionally vague by the United States ruling in [Johnson v. United States, 135 S. Ct. 2551 (2015).]" Aff. of Vicente Garcia at 3. The Government concedes that this claim is timely pursuant to § 2255(f)(3) because it was filed within one year of the

Supreme Court's initial recognition of the right asserted. Nonetheless, the Court agrees with the Government that Petitioner fails to establish <u>Johnson</u>'s applicability to the case at bar.[5]

A central principle of constitutional law is that the Court's power to declare a statute unconstitutional is exceptional and only to be used when "unavoidable." <u>See</u> <u>Spector Motor Serv. v. McLaughlin</u>, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality. . .unless such adjudication is unavoidable."); <u>see also</u> <u>Blodgett v. Holden</u>, 275 U.S. 142, 148 (1927) (Holmes, J. concurring) (Declaring legislation unconstitutional is "the gravest and most delicate duty that this Court is called on to perform[,]" and "the rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the [statute].").

Petitioner's argument is limited to a single paragraph providing the Court next to no guidance as to the grounds on which his claim rests.[6] Petitioner merely cites the <u>Johnson</u> case and concludes without any developed support whatsoever that <u>Johnson</u> renders his conviction under § 924(c)(1) unconstitutional. The Court is cautious not to develop arguments for Petitioner and such skeletal arguments constitute waiver. <u>See</u> <u>Fabriko Acquisition Corporation v. Prokos</u>, 536 F.3d 605, 609 (7th Cir. 2008) ("It is not the job of this court to develop arguments

---

[5] Certain of the Government's arguments assert that § 924(c)(3)(B), the residual clause, is not unconstitutionally vague. Since the parties filed their briefs, the Seventh Circuit deemed this clause unconstitutional. <u>United States v. Cardena</u>, 842 F.3d 959, 996 (7th Cir. 2016) ("[W]e hold that the residual clause in 18 U.S.C. § 924(c)(3)(B) is...unconstitutionally vague."). This holding, however, is not dispositive because the language in § 923(c)(3)(A) is materially distinguishable and passes constitutional muster.

[6] In full, the argument reads, "In the court case United State [sic] v[.] Vicente Garcia[,] court case No. 08-CR-748[,] Mr. Vicente Garcia['s] 18 U.S.C. [§] 924(c)(1) counts have been ruled unconstitutional [sic] vague by the United State [sic] Supreme Court ruling in the court case United State [sic] vs. Johnson[,] court case No. 13-7128. And Mr. Vicente Garcia present [sic] this claim to the Honorable Court and the Honorable Judge in the court case United State [sic] vs. Vicente Garcia to support all 18 U.S.C. [§] 924(c)(1) counts in his case have been rule [sic] unconstitutional [sic] vague and Mr. Vicente Garcia seek [sic] relief pursuant to the 18 U.S.C. [§] 924(c)(1) counts. Aff. of Vicente Garcia at 3.

18

for [parties].”); United States v. Alden, 527, F.3d 653, 664 (7th Cir. 2008) (“Because it is not the

obligation of this Court to research and construct the legal arguments available to parties,

…these arguments are waived.”); White Eagle Co-opinion Ass’n v. Conner, 553 F.3d 467, 476 n.

6 (7th Cir. 2009) (“[s]keletal and unsupported arguments will not be considered and the

argument will be deemed waived.”). The fact that Petitioner raises a constitutional issue does

not affect the analysis. United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991) (“We

have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are

unsupported by pertinent authority, are waived (even where those arguments raise constitutional

issues).”) (parentheses in original); see also Tyler v. Runyon, 70 F.3d 458, 466 (7th Cir. 1995)

(“If we assume the lawyers’ responsibilities, we unbalance the market for legal services and take

time away from our consideration and decision of other cases.”). Accordingly, the Court rejects

Petitioner’s claim as undeveloped.[7]

Even if Petitioner had fleshed out his assertion that the statute is unconstitutional, his

claim would still fail. Johnson held § 924(e)(2)(B) unconstitutional for two reasons. First, the

Court found that the clause left “grave uncertainty about how to estimate the risk posed by a

crime.” Johnson, 135 S. Ct. at 2557. Second, the provision left uncertain how much risk is

required for a crime to qualify as a “violent felony.” Id. at 2558. The “violent felony” language

is relevant to the case at bar because the provision under which Petitioner was convicted is also

predicated on a violent felony conviction. In Johnson, the term “violent felony” included any

offense that “otherwise involves conduct that presents a serious potential risk of physical injury

to another.” 18 U.S.C. § 924(e)(2)(B)(ii); see also id. Specifically, the provision’s four

enumerated crimes—burglary, arson, extortion, and crimes involving the use of explosives—

---

[7] Petitioner’s Clarified Amended Motion referenced above attempted to further develop his argument under Johnson.
However, the Court denied the Clarified Amended Motion without prejudice, and Petitioner never refiled. Thus, the
filing is not before the Court, so it receives no consideration.

were "far from clear in respect to the degree of risk each poses." Johnson, 135 S. Ct. at 2558 (internal quotation marks and citation omitted). Additionally, "asking whether the crime '*otherwise* involves conduct that presents a serious potential risk" forced courts to apply an imprecise standard for defining "serious potential risk." See id. (emphasis in original). The Court therefore held that imposing an increased sentence under the provision violated a defendant's due process rights. Id. at 2563).

Here, Petitioner's conviction is pursuant to a different statutory provision than that ruled unconstitutional by the Supreme Court in Johnson, and "violent felony" is defined in materially distinguishable terms in the provision at issue in this case. Section 924(c)(1)(A) provides for increased punishment where, in pertinent part, "any person who, during and in relation to any crime of violence or drug trafficking crime. . .for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. . ." The term "crime of violence" in this section is defined, in relevant part, as "an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another. . ." Id. at § 924(c)(3)(A). Thus, this Court agrees with the Government's position that the concern over evaluating the degree of risk in light of the problematic enumerated offenses does not exist here. See Johnson, 135 S. Ct. at 2558; see also Gov't Resp. at 38-39. Nor does the open-ended language forcing judges to imprecisely determine whether the crime at issue "otherwise involves conduct that presents a serious potential risk," id., in this case.

Section 924(c) is unambiguously applied to the crimes for which Petitioner was charged. Count Three of the indictment charged Petitioner with the use of a firearm during and in relation to a crime of violence—the VICAR violation in Count Two. The VICAR violation asserted that

Petitioner and certain co-defendants "for the purpose of maintaining and increasing the defendants' position in, the Latin Kings, did knowingly and intentionally commit assault with a dangerous weapon upon an individual, that is, Victim A, in violation of the laws of the State of Illinois." Gov't Resp. at 33 (citing R. 209, Superseding Indictment at 14-15). The jury was instructed that, under Illinois law, assault with a dangerous weapon is

> ". . . the offense of aggravated battery with a firearm in violation of 720 Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/12-4.2. Under Illinois law a person commits the offense of aggravated battery with a firearm when he, or one for whose conduct he is legally responsible, by means of discharging a firearm, knowingly and intentionally causes injury to another person."

Gov't Resp. at 33 (citing Tr. at 3052-53). There is no ambiguity as to whether knowingly and intentionally discharging a firearm involves the use of, attempted use, or threatened use of physical force. The Government's evidence at trial, through the testimony of multiple witnesses—including the shooter and victim—showed that the victim was shot in the ribs and that Petitioner ordered his co-defendant to have a gang member shoot a rival gang member. The law as applied to the facts unambiguously shows that Petitioner's violation of 18 U.S.C. § 1959(a)(3) constitutes an offense that is a felony, and the offense involved the use, attempted use, or threatened use of physical force against the victim. See United States v. Anglin, 846 F.3d 954, 965 (7th Cir. 2017) (discussing conviction under § 924(c), finding Hobbs Act robbery is a crime of violence under § 924(c)(3), and therefore joining "the unbroken consensus of other circuits" to hold that Hobbs Act robbery is a valid predicate for a § 924(c)(1)(A) conviction). Thus, the Court adopts the Government's position that 18 U.S.C. § 924(c)(1) does not violate Petitioner's constitutional rights.

### III. Conclusion

For the reasons set forth above, Petitioner's § 2255 petition is denied. A Certificate of Appealability is denied pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings for the United States District Courts because Petitioner failed to make a substantial showing that he was denied a constitutional right.

IT IS SO ORDERED.

ENTER:

_____

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: March 22, 2017