UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS NF

(EASTERN DIVISION)

FILED

APR 10 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| VICENTE GARCIA, | § | CIVIL ACTION NUMBER |
| Movant, | § | 16-CV-859 |
| V. | § | |
| UNITED STATES OF | § | CRIMINAL ACTION UMBER |
| AMERICA, | § | 08-CR-746 |
| Respondent. | § | |

MOTION FOR RECONSIDERATION OF ORDER ENTERED ON MARCH 22, 2017, DENYING MOVANT'S §2255

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, Vicente Garcia (hereinafter "Movant"), and hereby through PRO SE submits this Motion for Reconsideration of Order Entered on March 22, 2017, Denying his § 2255, and in support thereof, respectfully shows this Honorable Court as follows:

## I. INTRODUCTION

In support of the foregoing Motion, Movant will first of all inform this Honorable Court that he is being assisted by the Inmate Law Library Clerk of his place of confinement.

The Law Library Clerk and Movant herein are both layman at the Profession of Law, and would therefore ask that this Honorable Court recognize the standards set forth by the United States Supreme Court in HAINES v. KERNER,, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and in doing so, not hold Movant herein to the standards of a Professional Legal Litigator.

---

## II. JURISDICTION

---

Although motions for [reconsideration] are not specifically authorized by the Federal Rules of Civil Procedure, courts in the Seventh Circuit apply Rule 59(e) or Rule 60(b) standards to these motions. See UNITED STATES v. ROTH, 2010 U.S. Dist. LEXIS 38175 (E.D. Wis. Apr. 19, 2010); see also, OBRIECHT v. RAEMISCH, 517 F.3d 489, 493 (7th Cir. 2008) (discussing the difference between Rule 59(e) and Rule 60(b). A motion to alter or amend under Rule 59(e) "must be filed no later than 28 days [after] the entry of judgment." Fed. R. C. P. 59(e). If timely filed, a motion styled as a motion for reconsideration should be considered under Rule 59(e). KISWANI v. PHOENIX SEC. AGENCY, INC., 584 F.3d 741, 742 (7th Cir. 2009) (citing KUNIK v. RACINE CTY., WIS., 106 F.3d 168, 173 (7th Cir. 1997)).

However, when a motion otherwise appropriate for consideration under Rule 59(e) is not timely filed, it "automatically becomes a Rule 60(b) motion." Id. at 743

(quoting TALANO v. NW MED. FACULTY FOUND. INC, 273 F.3d, 757, 762 (7th Cir. 2001)). Here, Movant's motion is timely filed within the 28 days allotted by Rule 59(e), Thus, this Honorable Court has jurisdiction to consider Movant's reasons for Relief under this motion.

---

III. BACKGROUND AND PROCEDURAL HISTORY

---

On or around January 19, 2016, Movant herein filed his initial § 2255 Motion along with his memorandum of law. On May 9, 2016, Movant submitted a PRO SE "Motion to Amend pursuant to the Newly Decided Authority of JOHNSON v. UNITED STATES, 135 S.Ct. 2551 (2015) --namely "Affidavit of Facts." On June 16, 2016, the Government submitted its response to Movant's filings. Nevertheless, Movant [NEVER] received a copy of the Timely filed Response by the Government.

On June 27, 2016, the Government filed a "NOTICE REGARDING SERVICE" stating the following:

"... On June 16, 2016, the Government filed its Response Brief and sent a copy via U.S. Mail to Petitioner. The U.S. Postal Service [returned] the mailing to the government due to a clerical mistake with the address.

"On June 27, 2016, undersigned mailed out another copy of the Response Brief, along with this notice, to the corrected address for Petitioner..." Id. (Document Entry #16).

On August 15, 2016, Movant requested this Honorable Court to Grant him an Extension of Time to REPLY to the Government's Response. This Honorable Court GRANTED Movant's Motion and gave him until November 30, 2016, to file his Reply. Nevertheless, the Federal Bureau of Prisons ordered Movant to pack all his Personal Property, including Legal Documents, because he was being transferred to U.S.P. Leavenworth. Thus, Movant was separated from his Legal Documents and could not properly file a timely "REPLY" to the Government Response.

On November 28, 2016, Movant again filed a Motion for Extension of Time to file his "REPLY" to the Government's Response. This Honorable Court Granted his Motion and gave him until February 28, 2017, to file his REPLY to the Government's Response. Nevertheless, due to prison circumstances Movant was [again] separated on January 29, 2017, from his legal documents, and was not permitted to timely file his REPLY.

Thus, on February 24, 2017, Movant filed his third Motion for Extension of Time, so that he could have ample time to [obtain] his legal documents and file his REPLY Motion to the Government's Response. Nevertheless, this Honorable Court DENIED Movant's Motion as moot and filed a Court Order DENYING Movant § 2255, [without] permitting Movant to contest the Government's Response. See, Court Order entered on March 22, 2017.

Hence, Movant herein was [not] permitted to CONTEST the Government's Response according to the § 2255 procedures, and therefore moves this Honorable Court to GRANT this "MOTION FOR RECONSIDERATION" and accept Movant's Reply arguments set forth herein below and make a proper determination of Movant's issues raised in his § 2255.

---

IV. REASONS FOR GRANTING THIS MOTION

---

Thus, based on the fact that Movant was not permitted to [contest] the Government's Response in his REPLY Motion, this Honorable Court should take into consideration the [below objections] to the Government's Response and GRANT this "Motion for Reconsideration" of Movant's § 2255.

Movant herein states, that had he been given the opportunity to properly file his REPLY Motion, Movant would had contested the following:

---

[1] OBJECTION TO THE GOVERNMENT'S RESPONSE OF MOVANT'S CLAIM NINETEEN:

---

TRIAL COUNSEL FAILED TO [PROPERLY] OBJECT AT SENTENCING TO THE APPLICATION OF A CROSS-REFERENCE UNDER GUIDELINE § 2A1.1.

The Government ERRS that Movant's Trial Counsel "properly challenged" the CROSS-REFERENCE [under Guideline § 2A1.1]. Movant's Trial Counsel did make an effort to OBJECT in the Presentence Investigation Report and Sentencing Memorandum in Support of Variance, to try to bring to the Court's attention the fact that under U.S.S.G. § 1B1.3, Movant [could not] be held responsible for the actions of his or her co-conspirators provided that the action was taken "in furtherance of the execution of the JOINTLY-UNDERTAKEN CRIMINAL ACTIVITY that was reasonably foreseeable by the defendant."

Trial Counsel OBJECTED in part to the important § 1B1.3 [STEP ANALYSIS] that were required in order to apply the RELEVANT CONDUCT guideline to RICO Act ONE; TWO AND THREE; FIVE; SIX; SEVEN; EIGHT; RICO Act ELEVEN and COUNT NINE; RICO act TWELVE & COUNTS 11 and 14; [BUT NEVERTHELESS] FAILED to [Object] and request that this Honorable Court make a thorough THREE-STEP ANALYSIS of § 1B1.3(a)(1)(B) on the application of the Murder and Attempted Murder Guidelines, and in the above mentioned Acts and Counts.

Furthermore, Trial Counsel further FAILED during the Sentencing hearing to assure that this Honorable Court make a proper and thorough determination of the THREE-STEP analysis under § 1B1.3(a)(1)(B), before it could apply any "Relevant Conduct" enhancements. Counsel basically [ABANDONED] Movant's OBJECTIONS under the [required] THREE-STEP analysis, when it

[ASSUMED] that Movant's OBJECTIONS were identical to those of his CO-Defendant's. The following took place on February 8, 2013, during Movant's Sentencing proceeding:

THE COURT: As to your objections, you may proceed.

MR. LOPEZ: Judge, if it please the Court, WE DID FILE OUR OBJECTIONS ON [NOVEMBER] 12TH.

THE COURT: Yes

MR. LOPEZ They have been -- I think that both sides have adequately addressed each of the issues in all of our OBJECTIONS.

We did speak to the defendant and the government raised an issue in their moving papers that was filed last month in regard to the defendant not objecting to County 4 and 9, which is the RICO ACT 4 and 9.

So the defendant has asked us to PRESERVE that issue for the record.

The objections [t]hat we have filed so far, Judge, many of these objections you HAVE ALREADY CONSIDERED in other sentencing hearings that are very CLOSELY SITUATED. As you recall, in the Augustin Zambrano sentencing hearing the Court basically ADDRESSED many of these SAME THINGS when you found that Mr. Zambrano was a leader of the Latin Kings, just like the government is saying here that the defendant stepped into a leadership position after Mr. King was arrested in 2006.

SO MANY OF OUR OBJECTIONS THAT WE HAVE GO TO THE [FORESEEABILITY], which I think the Court has already found that if you are a leader of the organization then all of these

acts are foreseeable. WE DON'T WANT TO SIT HERE AND ARGUE [AD NAUSEAM] TO THE COURT A POSITION THE COURT HAS ALREADY TAKEN.

So I don't know if you want me to go through each one of them, or we can rely on the moving papers and get to the 3553(a) factors.....

THE COURT: .... All right. Then I think the record is clear in terms of the paper submissions as raised by the defendant here, Vincent Garcia, Zambrano, and numerous others. AND THE COURT HAS NO REASON TO CHANGE ANY RULING IT HAS CONSISTENTLY MADE. AND FOR THE SAME REASONS THE OBJECTIONS OF VICENTE GARCIA ARE [OVERRULED]..."

Id. See Transcript of the Sentencing Proceedings of February 8, 2013, pgs. 14 thru 16.

Thus, Movant's Trial Counsel COMMITTED INEFFECTIVE ASSISTANCE OF COUNSEL when it [failed] to REQUIRE that this Honorable Court make a particularized finding under the THREE-STEP ANALYSIS of § 1B1.3(a)(1)(B) (RELEVANT CONDUCT) to the application of the MURDER and ATTEMPTED MURDER Guidelines, --as well as to the other RICO Acts mentioned above--, that were attributed to Movant herein, [RATHER] THAN JUST DEFAULT TO THE OVERALL CONSPIRACY.

This Honorable Court thus applied § 1B1.3(a)(1)(B) (Relevant Conduct -- Factors that Determine the Guideline Range) under the "NEGLIGENCE STANDARD" and basically held that under its own assumption it believed that Movant [SHOULD HAVE

FORESEEN] the likelihood that such above acts would occur since he had agreed to be a LATIN KING and a Leader of the organization. The application of the "CROSS-REFERENCE" for Murder and Attempted Murder under this simple step of § 1B1.3(a)(1)(B) was ERROR.

One must point out that there has always been a clear conflict between the LESSER "FORESEEABILITY" REQUIREMENT of the "RELEVANT CONDUCT" guideline and the more difficult requirement of [KNOWLEDGE] and INTENT called for by the cases interpreting 18 U.S.C. § 2, the accomplice liability section of Federal Statutory Law. Seventy-Five years ago in UNITED STATES v. PEONI, 100 F.2d 401, 402 (2nd Cir. 1938), Judge Hand held that accomplice liability for aiding and abetting a federal crime under § 2 requires that the defendant "in some sort associate himself with venture, that he participate in it as in something that HE WISHES TO BRING ABOUT, that he seek by his action to make it succeed." The Federal Courts have applied this STANDARD for many years. The cases, as well as the Model Penal Code commentary, are collected in a comprehensive EN BANC opinion by the District of Columbia Court of Appeals. WILSON-BEY v. UNITED STATES, 903 A.2d 818, 830-39 (D.C. 2006) (en banc).

NEVERTHELESS, without referring to the FEDERAL STATUTORY STANDARD for accomplice liability promulgated by Congress, the Federal Courts (such as this Honorable Court) seem to have consistently applied to the "MURDER CROSS-REFERENCE ENHANCEMENT" the [LESSER] "FORESEEABILITY" STANDARD

set out in the guidelines. Thus, the Honorable United States Sentencing Commission has now apparently recognized the INCONSISTENCY between its "REASONABLE FORESEEABILITY" standard in § 1B1.3(a)(1)(B) and the Judge Hand Standard for accomplice liability articulated above where there is joint criminal conduct and have move to CLARIFY THE USE OF RELEVANT CONDUCT under § 1B1.3(a)(1)(B).

Thus to CLARIFY the matter and to properly guide the Federal Courts, the United States Sentencing Commission [struck from the Guideline] "ALL REASONABLY FORESEEABLE ACTS AND OMISSIONS OF OTHERS IN FURTHERANCE OF THE JOINTLY UNDERTAKEN CRIMINAL ACTIVITY" and SUBSTITUTED language stating that the accomplice liability is LIMITED TO THE "SCOPE" of the plan that the accomplice undertook to carry out. The new language inserted by the Sentencing Commission in U.S.S.G. § 1B1.3(a)(1)(B) is a follows:

"all acts and omissions of others that were: (i) within the SCOPE of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, (iii) reasonably foreseeable in connection with that criminal activity;...

"The conduct of others that meets all three criteria set forth in subdivisions (i) through (iii) (i.e., within the SCOPE, in furtherance, and reasonably foreseeable) is relevant conduct under this provision. However, when the conduct of others DOES NOT meet any one of the criteria set forth in subdivisions (i) through (iii), the conduct IS NOT relevant

conduct under this provision.

"(B) SCOPE: Because a count may be worded broadly and include the conduct of many participants over a period of time, the SCOPE of the jointly undertaken criminal activity, [IS NOT] necessarily the same as the SCOPE of the entire conspiracy, and hence RELEVANT CONDUCT IS NOT NECESSARILY THE SAME FOR EVERY PARTICIPANT. In order to determine the defendant's accountability for the conduct of others under subsection (a)(1)(B), the court MUST [FIRST] DETERMINE THE [SCOPE] OF THE CRIMINAL ACTIVITY THE PARTICULAR DEFENDANT [AGREED] TO JOINTLY UNDERTAKE (i.e., the SCOPE of the specific conduct and objectives embraced BY THE DEFENDANT'S AGREEMENT). In doing so, the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others. ACCORDINGLY, the accountability of the defendant for the acts of others IS LIMITED BY THE SCOPE OF HIS OR HER AGREEMENT to jointly undertake the [particular] criminal activity. ACTS OF OTHERS THAT [WERE NOT] WITHIN THE SCOPE OF THE DEFENDANT'S [AGREEMENT], even if those acts [were known] or Reasonable Foreseeable to the Defendant, ARE NOT RELEVANT CONDUCT UNDER SUBSECTION (a)(1)(B)..."

See AMENDMENT 790 of the United States Sentencing Guidelines.

Furthermore, the Honorable Sentencing Commission [clearly] held in AMENDMENT 790 that its intention was to [CLARIFY] a policy that ALREADY EXISTED, but that was more than likely MISINTERPRETED by the Federal Courts. The

Sentencing Commission stated in its Reason for the Amendment:

REASON FOR AMENDMENT: "This amendment is a result of the Commission's EFFORT TO CLARIFY the use of RELEVANT CONDUCT in offenses involving multiple participants.

"The amendment MAKES CLARIFYING REVISIONS to § 1B1.3 (Relevant Conduct [Factors that Determine the Guideline Range]). It restructures the guideline and its commentary to set out MORE CLEARLY the [THREE-STEP] analysis the court applies in determining whether a defendant is accountable for the conduct of others in a jointly undertaken criminal activity under § 1B1.3(a)(1)(B). The three-step analysis requires that the court (1) IDENTIFY the SCOPE of the jointly undertaken criminal activity; (2) determine whether the conduct of others in the jointly undertaken criminal activity was in furtherance of that criminal activity; and (3) determine whether the conduct was reasonably foreseeable in connection with that criminal activity.

"Prior to this amendment, the 'SCOPE' ELEMENT of the three-step analysis was identified in the commentary to § 1B1.3, [BUT WAS NOT] included in the text of the guideline itself. This amendment MAKES CLEAR that, under the 'jointly undertaken criminal activity' provision, a defendant is accountable for the conduct of others in a jointly undertaken criminal activity IF THE CONDUCT MEETS [ALL THREE] CRITERIA OF THE [THREE-STEPS] ANALYSIS." Id.

HENCE, there is [NO DOUBT] that Movant's Counsel FAILED to properly OBJECT and to PROCEED with the OBJECTIONS on the aforementioned issues, to make sure that this Honorable

Court make the particularized finding of the THREE-STEP ANALYSIS of § 1B1.3(a)(1)(B), before increasing Movant's Sentence under the FIRST DEGREE MURDER and ATTEMPTED MURDER ENHANCEMENTS.

FURTHERMORE, Trial Counsel [FAILED TO OBJECT] and to carry through his Objections under the THREE-STEP ANALYSIS of § 1B1.3(a)(1)(B), that the Government [HAD FAILED TO PROVE] that any DEATHS and/or SHOOTINGS were Gang Related, and had "occur[ed] during the commission of the OFFENSE OF CONVICTION, in preparation for that offense, or in the course of attempting to avoid detection or responsibility FOR THAT OFFENSE." U.S.S.G. § 1B1.3(a)(1)(B).

The indictment in Movant's case listed a number of predicate acts, that were [NOT] ELEMENTS OF THE OFFENSE for the RICO charge. Movant's special verdict forms [DID NOT] contain the predicate acts, and one does not know whether the jury specifically found that Movant herein committed and/or was responsible for the Offense Elements of MURDER or ATTEMPTED MURDER, for which the Government and this Court held Movant herein responsible. Thus, this alleged acts were [NOT] part of his "OFFENSE OF CONVICTION."

The [phrase] "OFFENSE OF CONVICTION" is not defined under the definitions section of the Guidelines." UNITED STATES v. REBMANN, 321 F.3d 540, 543 (6th Cir. 2003); see also U.S.S.G. § 1B1.1 cmt. n.1. Nonetheless, numerous courts have analyzed the Guidelines, as a whole --including the

definition of "OFFENSE OF CONVICTION" provided in Section 1B1.2(a)-- and the history of the Guidelines determine that the [PHRASE] "OFFENSE OF CONVICTION" describes ONLY the precise conduct constituting THE CRIME FOR WHICH THE DEFENDANT WAS CONVICTED, and does [not] include non-offense relevant conduct." REBMANN, 321 F.3d at 543-44; see, e.g., UNITED STATES v. HOLBERT, 285 F.3d 1257, 1261 n.3 (10th Cir. 2002) ("The Sentencing Guidelines do not specifically define 'OFFENSE OF CONVICTION,' but indicate that the PHRASE encompasses ONLY facts immediately related to the specific offense for which the defendant was convicted."); UNITED STATES v. PRESSLER, 256 F.3d 144, 157 n.7 (3rd Cir. 2001) (finding that the PHRASE "OFFENSE OF CONVICTION" includes ONLY the substantive crime for which a particular defendant was con victed").

A definition of "OFFENSE OF CONVICTION" that includes only the substantive crime charged ENSURES that defendants have NOTICE OF THE PRECISE NATURE OF THE CHARGES PROVIDED IN THE INDICTMENT OR INFORMATION. See, e.g., UNITED STATES v. SMITH, 44 F.3d 1259, 1263-64 (4th Cir. 1995) (stating that "basic principle[]" that an indictment "must contain allegations of EACH ELEMENT OF THE OFFENSE CHARGED, so that the defendant is given fair notice of the charge THAT HE MUST DEFEND." (citations omitted)); Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged....").

Thus, the phrase "OFFENSE OF CONVICTION" --as used in the Guidelines [OUTSIDE] of Section 1B1.2(a)-- includes [ONLY] the substantive crime for which a defendant WAS CONVICTED. The alleged MURDERS and ATTEMPTED MURDERS were NEVER PROVED by the Government to have "occurred[] during the commission of the OFFENSE OF CONVICTION, in preparation FOR THAT OFFENSE, or in the course of attempting to avoid detection or responsibility FOR THAT OFFENSE." NOR DID THE GOVERNMENT MEET THE [THREE-STEP ANALYSIS] of § 1B1.3(a)(1)(B)

WHEREFORE, there is NO DOUBT that Movant's Trial Counsel committed INEFFECTIVE ASSISTANCE when he [FAILED] to properly OBJECT and carry its OBJECTION through the Sentencing Hearing to make sure that this Honorable Court MAKE PARTICULARIZED FINDINGS about RELEVANT CONDUCT under the [THREE-STEP ANALYSIS] of § 1B1.3(a)(1)(B), [RATHER] than just DEFAULT to the overall conspiracy. Movant was sentenced under the "NEGLIGENCE STANDARD" as this Honorable Court held that Movant [SHOULD HAVE FORESEEN] the likelihood that such above acts would occur since he had agreed to be a LATIN KING and a Leader of the organization. The application of the "CROSS-REFERENCE" for Murder and Attempted Murder under this simple step of § 1B1.3(a)(1)(B) was ERROR.

Thus, Counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional error, the outcome of Movant's Sentence would have been different pursuant to the REQUIRED [THREE-STEP ANALYSIS] of § 1B1.3,

that have been CLARIFIED by the Sentencing Commission in Amendment 790.

---

[2] OBJECTION TO THE GOVERNMENT'S RESPONSE OF MOVANT'S SUPPLEMENTAL CLAIM [C], UNDER JOHNSON v. UNITED STATES, 135 S.Ct. 2551 (2015)

---

The Government ERRS in its Response to Movant's § 2255 claim pursuant to JOHNSON v. UNITED STATES, supra, based on the fact that it [OMITTED] the "CAUSING [ANY] INJURY" from the State of Illinois [AGGRAVATED BATTERY] with a firearm in violation of 720 Illinois Complied Statutes, Sections 5/5-1, 5/5-2, 5/12-4-2.

Count Three of the superseding indictment charged Movant with using and carrying a firearm during and in relation to a crime of violence, namely the VICAR violation charged in Count Two --which alleged that Movant and his co-defendants Ernesto and Nedal Issa "for the purpose of maintaining and increasing the defendant's position in, the Latin Kings, did knowingly and intentionally commit [assault] in March 2, 2006, with a dangerous weapon upon an individual, that is, Victim A, in violation of the State of Illinois.

Under Illinois law, a conviction for Aggravated Battery [with a firearm] requires the State to PROVE that the defendant committed "a battery, knowingly or intentionally by

MEANS of the discharging of a firearm... [] causing [ANY] injury to another person." 720 Ill. Comp. Stat. 5/12-4.2(a)(1) (West 2006).

Thus, the thornier issue herein is, whether Movant's Illinois Aggravated Battery with a Firearm under 720 ILCS 5/12-4.2 (2006 version), that was used to convict Movant under Count Two, that was then used in Count Three to convict Movant of 18 U.S.C. §924(c), was a "CRIME OF VIOLENCE" under § 924(C)(3)(A) or (B).

Typically, courts must apply a CATEGORICAL APPROACH, asking [only] whether the ELEMENTS OF THE OFFENSE forming the basis of the prior conviction sufficiently match the elements of the generic or commonly understood version of that crime. Courts confine their inquiry to the elements of the prior crime, i.e., the constituent parts of the legal definition of the crime. Courts do not delve into the facts or circumstances of how a particular defendant committed that crime. The "ELEMENTS" are what the jury must find to convict the defendant at trial (i.e., what the prosecution had to PROVE beyond a reasonable doubt) or what the defendant necessarily admitted in pleading guilty. See MATHIS v. UNITED STATES, 136 S.Ct. 2243, 2248 (June 23, 2016).

As long as the elements of the prior crime are the same as or narrower than the generic offense, the prior crime counts as a predicate. See, e.g., TAYLOR v. UNITED STATES, 495 U.S. 575, 599, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (if

the State statute is narrower than the generic view, "there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of" the generic offense).

The inquiry is simple if the statute defines a crime with ONE INDIVISIBLE SET OF ELEMENTS, "the court then lines up that crime's elements alongside those of the generic offense and sees if they match." MATHIS, 136 S.Ct. at 2248. The task is made more difficult when the statute lists the elements in the alternative and thereby defines multiple crimes. Id. at 2249. In that situation, confronted with a "divisible" statute, the court may follow the MODIFIED CATEGORICAL APPROACH and consult a limited class of documents (e.g., indictment, jury instructions, plea agreement and colloquy) "to determine what crime, with what elements, a defendant was convicted of," and then compare that crime with the relevant generic offense. Id., citing SHEPARD v. UNITED STATES, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).

The tasks is HARDER still if the statute lists multiple alternative MEANS of satisfying one of its elements. That was the type of statute under review in MATHIS. In that case, the defendant received a 15-year sentence enhancement in federal court based on his prior convictions under Iowa's burglary statute. The generic offense of burglary has the following elements: unlawfully entry into a building or other structure with the intent to commit a crime. The Iowa

burglary statute covered not just buildings or structures but also vehicles, meaning there was more than one way to fulfill a single element of the Iowa burglary law.

In MATHIS, the Supreme Court emphasized that Iowa's bu rglary statute set out DISJUNCTIVE MEANS or "FACTUAL SCENARIOS" of committing the crime of burglary, NOT alternative Elements of Conviction. This meant the Iowa law [WAS NOT] a divisible statute. Reliance on a conviction under this kind of statute is PROBLEMATIC, because a jury need NOT necessarily make specific findings at trial to obtain a conviction for (or a defendant make specific admissions in pleading guilty to) such a crime. MATHIS, 136 S.Ct. at 2249. Since the Iowa statute was NOT divisible, the sentencing judge [was not] allowed to invoke the Modified Categorical Approach to inspect records of the prior conviction and determine whether the defendant had burgled structures (which would match generic burglary) as opposed to vehicles (which would not match generic burglary).

The sentencing judge had to STICK WITH THE CATEGORICAL APPROACH and ask whether the ELEMENTS of Iowa burglary were the same as or narrower than those of the generic offense of burglary. They were NOT. The elements of Iowa's burglary statute were BROADER than the elements of the generic offense of burglary, so a prior conviction for burglary in Iowa could not be counted as an ACCA violent felony predicate.

Thus, Movant's Count Three under the DEFINITION of the

Illinois Criminal Statute 720 ILCS 5/12-4.2 (2006 VERSION), was [ANALOGOUS] to the Statute in MATHIS, and therefore [DOES NOT] fall into the definition terms of a "CRIME OF VIOLENCE" under 18 U.S.C. § 924(C)(3)(A). Hence, Movant was sentence under the UNCONSTITUTIONALLY VAGUE CLAUSE of § 924(C)(3)(B), and the Government ERRS.

Furthermore, the "causing [ANY] injury" clause that was OMITTED by the Government from the Illinois Statute 720 ILCS 5/12/4.2, further shows that this "ANY INJURY" clause did [not] have to be committed with "Violent Force" as required under 18 U.S.C. § 16(a) or § 924(C)(3)(A). JOHNSON v. UNITED STATES, 559 U.S. 133, 140 (2010).

Wherefore, Movant herein should be GRANTED RELIEF under JOHNSON v. UNITED STATES, 135 S.Ct. 2551 (2015), and/or in the Alternative, this Honorable Court should hold its decision in ABEYANCE until the United States Supreme Court issues its decision in LYNCH v. DIMAYA, 137 S.Ct. 31, 195 L.Ed.2d 902 (2016).

---

PRAYER AND CONCLUSION

---

WHEREFORE, Movant herein prays that this Honorable Court GRANT this Motion for Reconsideration and issue a New Ruling on Movant's § 2255, taking the aforementioned into consideration, that was not permitted when this Honorable

Court denied Movant's Motion for Extension of Time to file his REPLY Motion to the Government's Response.

Movant herein, furthermore prays that this Honorable Court GRANT all further RELIEF to which he may be entitled to in this proceeding in the interest of justice; to include, the Appointment of Counsel to represent him properly in these proceedings.

Respectfully submitted,

Vicente Garcia

Vicente Garcia (PRO SE)
Reg. No. 43509-279
U.S. Penitentiary
P.O. BOX 1000
LEAVENWORTH, KS 66048

CERTIFICATE OF SERVICE

I, Vicente Garcia, hereby certify that I have forwarded a true and correct copy of the foregoing instrument by the method indicated to all counsel of record listed below on the 1st day of April, 2017.

(U.S. FIRST CLASS MAIL)

MATTHEW J. HERNANDEZ

ASST. U.S. ATTORNEY

219 SOUTH DEARBORN, FIFTH FLOOR

CHICAGO, ILL  60604

Vicente Garcia

Vicente Garcia

Vicente Garcia Reg.# 43509-279
U.S. Penitentiary
P.O. Box 1000
Leavenworth, KS 66048




04/10/2017-74

RECEIVED
APR 10 2017
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Prisoner Correspondence

⇔43509-279⇔
Thomas G Bruton
U.S. District Clerk
219 S Dearborn ST
U.S. District Court
Chicago, IL 60604
United States

"SPECIAL MAIL"

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE
CERTIFIED MAIL®
7014 1820 0000 4254 5502

"SPECIAL MAIL"

INSPECTED
U.S. Marshals

P.O. BOX 1000
LEAVENWORTH, KANSAS 66048

DATE: ____________________

The enclosed letter was processed through special mailing procedures for forwarding to you. The letter has been neither opened nor inspected. If the writer raises a question or problem over which facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another addressee, please return the enclosure to the above address.

RECEIVED
APR 05 2017